# Irwin *v.* Mayor, &c. of Mobile.

*Action to recover Money paid under Protest.*

1. *Constitution of* 1868; *when became operative.*—The Constitution of 1868 did not become the Constitution of the State of Alabama, or binding on its citizens, until the 25th day of June, 1868.

2. *Constitutional law; power of legislature to authorize improvement of streets at expense of adjacent landed proprietors.*—In the absence of constitutional restrictions, the power of the legislature to authorize municipal

[Irwin v. Mayor, &c. of Mobile.]

corporations to improve streets at the expense of the adjacent landed proprietors, is undoubted.

3. *Same.*—The provisions of the charter of the city of Mobile, approved February 2, 1866, authorizing its authorities, in certain contingencies, to improve streets at the expense of adjacent land owners, and to apportion the expense according to the front of such property on the street so improved, were, at the time of its passage, a valid exercise of legislative power.

4. *Same.*—Until the city authorities act upon the application of real estate owners to have a street improved, at the expense of adjacent proprietors, any one of the applicants may revoke his action; and if this reduce the number to less than that required by the charter, the power of the municipal authorities to make such improvement is thereby taken away; if, before such revocation, the city has entered into a contract to have the work done, it is too late to retract.

5. *Presumptions in favor of ruling of primary court.*—Where the validity of a contract depends upon the time when it was entered into, it will not be presumed that it was made after the adoption of a law which forbade it, if the record is silent on that point, and such presumption will militate against the judgment of the court below; so, also, where the right to revoke an application to have a street improved, depends upon whether the city had made a contract to have the work done, the appellate court can not hold it error to reject evidence of such revocation, the record not showing whether it was attempted before or after the making of a contract.

APPEAL from Circuit Court of Mobile.

Tried before Hon. JOHN ELLIOTT.

The appellant Irwin, as executor of Fearne, brought his action against the "Mayor, Aldermen and Common Council of the City of Mobile," to recover certain taxes or assessment paid by him to the city under protest.

During Fearne's life-time, but at what date is not shown, he, with others, signed the following petition:

"To the Honorable, the Mayor, Aldermen and Common Council of the City of Mobile: Your petitioners, owners of real estate, fronting on Royal street, between St. Francis street and St. Michael street, most respectfully pray your honorable bodies to forthwith enter into a contract with the Mobile Paving Company for the paving of that portion of said Royal street between St. Michael and St. Francis streets, with patent Nicholson pavement."

The petition was presented and read to the Board of Aldermen on the 7th day of April, 1873, and was afterwards referred to the joint street committees. The Common Council concurred in this action. On the 19th day of May the joint committee reported that the application was signed "by the owners of all the property on the east side of the street it was proposed to improve, and all of the west side, except less than one-third;" and "as the cost of the new pavement will be assessed upon the owners of the property and not upon the city," the committee recommended that the petition be granted. Accompanying this report, was a resolution

directing the Mayor to make a contract for laying down the pavement. The report was concurred in and the ordinance adopted on the same day, by the Common Council. The Board of Aldermen concurred in this action on the 21st day of May, 1868, and the resolution was approved the next day.

Certain provisions of the charter of Mobile, approved February 2d, 1866, authorized the corporate authorities, at the expense of the city, to " pave, shell, or plank any street or part of street, " and, also, " upon the written application of the owners of at least one-third in quantity of the real estate, located on each side of the street or streets, part or parcel of street, which it may be proposed to have thus improved, " . . . " which shall be done at the expense of the owners of the property located on any street or part of street so improved, in such proportion as that each piece of said property shall pay of the expense of any such improvement a fractional share thereof equal to its front on any such street or parts of street so improved. "

Nicholson pavement was laid on the street according to the prayer of the petition. When or by whom this was done is not shown, otherwise than by the statement in the bill of exceptions, that " this had been done by the procurement of the corporate authorities of Mobile. " Fearne died on the 24th day of May, 1868. Some time in the same year, demand was made on Irwin, as executor, for payment of the amount assessed against Fearne's property, and it was paid, under protest, in November of the same year.

The bill of exceptions states that appellant offered evidence that " Fearne, in his life-time, had revoked his said signature on said petition before the work was commenced ;" and the court, on motion of the defendant, excluded it, and plaintiff excepted.

The court charged the jury, in substance, that although the portions of the charter referred to might be unconstitutional, the plaintiff was not entitled to recover, if the jury found that the work was done by the city as prayed in the petition ; that such request would be a waiver of the unconstitutionality of the law. The defendant excepted.

The jury found a verdict for the defendant, and plaintiff brings the case here by appeal, assigning as error the charge given by the court, and the exclusion of the evidence of the revocation of Fearne's signature.

GEORGE N. STEWART, for appellant.—The sections of the charter authorizing the paving to be done at the expense of

[Irwin v. Mayor, &c. of Mobile.]

the property holders are unconstitutional.—*Mayor v. Dargan* 45 Ala. 310; *Hammett v. Philadelphia*, 65 Pa. State, 146. There is nothing in the language of the application, which authorized the city authorities to treat it as a petition to have the paving done at the expense of the petitioners.—16 Ala. 580. Its language no . more justified such a construction, than would an application to have a gas post put up, or a pump erected, authorize the city to contract to have these things done at the expense of the petitioners. Fearne could withdraw his signature at any time, before some third person acquired vested rights thereby; and in that event, so far as the power of the city to do the paving depended on his signature, it was revoked when his assent was withdrawn. The ·assessment can. derive support only from the statute; and it is .for the city to show that every substantial requirement of the statute was complied with, and not for the property ·.owner to show to the contrary.

STEPHENS CROOM, *contra.*—The decision in *Dargan v. Mayor*, should be re-examined. It is contrary to the weight of adjudged cases.—38 Cal. 345; 3 Kansas, 186; 5 Ohio .Stat. 243; 26 Ill. 351; 24 New York, 420; 30 Mo. 537; 11 La. Ann. 338; Dillon on Municipal Corporations, §§ ·596–603. There was no error in excluding the evidence that Fearne revoked his signature "before the work was ·commenced." It was not offered to be shown that the city had notice of such revocation, or that it had not before that made a contract to have the paving done. Where a consti-:tutional provision is designed solely for the protection of the property rights of the citizen, he may waive the protection, ;and consent to such action as would be invalid if taken against his will.—38 N. Y. 266; Cooley Con. Lim. 181. In Dargan's case there was no consent or request of the property owner who sought to avoid the assessment. This takes the present case without the influence of that decision.

STONE, J.—The case of *Mayor, Aldermen, &c. of Mobile v. Dargan*, 45 Ala. 310, and the case of *Mayor, &c. v. Royal Street Railroad Company*, same volume, 322, were made to turn on the principle therein declared, that the Constitution of 1868 had repealed sections 58 and 94 of the act "to incorporate the city of Mobile," approved February 2, 1866.—Pamph. Acts, 202.

What is known as the Constitution of 1868, did not become the Constitution of Alabama, or binding upon its citizens,

until the same was approved by Congress. On the 25th day of June, 1868, the Congress of the United States, by the requisite majorities, passed over the veto of the President, the "act to admit the States of North Carolina, South Carolina, Louisiana, Georgia, Alabama, and Florida, to representation in Congress." The preamble to said act recites that the people of said States had "framed constitutions of State government which are republican, and have adopted said constitutions by large majorities of the votes cast at the elections held for the ratification or rejection of the same." See 15 Stat. at Large, 73–4.

Prior to the passage of that act by Congress, it had been held by the officers in charge of the election and its returns, that the said constitution had not been adopted by the votes of the people of Alabama. Hence, we affirm that said constitution became operative and obligatory in Alabama, only on the 25th day of June, 1868.

The proposition "to have Royal street, between St. Francis and St. Michael streets, paved with the Nicholson pavement," was concurred in and determined upon by the city authorities of Mobile, on the 22nd day of May, 1868, more than a month before the adoption of the constitution. When the contract was made, or when the work was done, the record does not inform us. For the purpose of putting the Circuit Court in error, or of showing that the city government of Mobile made a contract beyond the pale of its constitutional power, we can not suppose, in the absence of proof, that the contract, under which the pavement was laid, was made after 25th June, 1868. We hold that this case must be determined without any reference to the provision of the Constitution of 1868, which declares that "all taxes levied on property in this State shall be assessed in exact proportion to the value of such property."

There are decisions on constitutional provisions substantially like ours copied above, which, in opposition to the ruling in *Mayor, Aldermen, &c. v. Dargan,* hold that local assessments may be made for opening or grading streets, on property holders attingent, graduated by the frontage of the several proprietors whose lands they touch.—See *Emery v. Gas Co.,* 28 Cal. 345; *Street Case,* 20 La. An. 497; *Garrett v. St. Louis,* 25 Mo. 505; *Hines v. City of Leavenworth,* 3 Kan. 186; *Malchus v. District of Highlands,* 4 Bush. (Ky.) 547; 2 Dil. Mun. Corp., §§ 598 *et seq.* Against this view, and concurring with our own decisions, see *Chicago v. Larned,*

[Irwin v. Mayor, &c. of Mobile.]

34 Ill. 203. We propose, however, not to consider this. question, as it is not raised by this record.

In the absence of such constitutional restraints on taxation as are found in our Constitution of 1868, the constitutional power of the legislature to confer on municipal corporations the authority to improve streets at the expense of the adjoining landed proprietors, though frequently questioned, has been so generally maintained, and with such convincing arguments, that we deem it almost unnecessary to enter upon the discussion. It is part of the taxing power of the government; and the legislature of the State being omnipotent, save as its power is limited by constitutional inhibitions, it would seem to follow that that body must be clothed with a very large discretion in its exercise.—See *Dorman v. State*, 34 Ala. 231-2. The case of *The People v. Mayor, &c. of Brooklyn*, 4 Comst. 419, is confessedly a leading one on this subject. The opinion of Justice RUGGLES in that case is elaborate and able, and fully maintains the power. To the same. effect are the following decisions: *Lexington v. McMillan*, 9 Dana, 513; *Philadelphia v. Tryon*, 35 Penn. State, 401; *Dargan v. Boston*, 12 Allen 223; *Gilkeson v. Justices*, 13 Grat. 577. Similar decisions in the following States: Maryland, North Carolina, Mississippi, Louisiana, Ohio, Tennessee, Arkansas, Indiana, Wisconsin, Iowa, Missouri, California, Connecticut and South Carolina.—See collection of authorities, with that able author's sanction, 2 Dillon on Mun. Corp. § 596, and notes. Mr. Cooley has added the weight of his distinguished name to the strong array of authorities above, in maintenance of the constitutional power of the legislature to authorize such assessments, when no constitutional barrier intervenes.

We hold, then, that sections 58 and 94 of the act to incorporate the city of Mobile, approved February 2, 1866, were constitutional; and that on the 22d day of May, 1868, their constitutionality stood unaffected by the Constitution of 1868.

In the case of *Hammett v. Philadelphia*, 65 Penn. State, 146, a distinction was drawn between the power to make local assessments, for the *original* opening and paving of streets, and the same power to repair and improve streets which had been previously opened, and made public highways. The first of the propositions was conceded by all the judges. They were divided on the second. Justice SHARSWOOD, delivering the opinion of the majority of the court, denied the power in the second branch of the proposition. His opinion is epitomized in the following brief extract:.

" Local assessments can only be constitutional when imposed for local improvements, clearly conferring special benefits on the property assessed, and to the extent of those benefits. They can not be so imposed when the improvement is so expressed, or appears to be for general public benefit." READ J. dissented, and WILLIAMS J. concurred with him. The decision stands, three judges for, and two against it. The argument on each side was able, and the profession can not fail to discover that the majority opinion was influenced mainly by the facts, that the act of assembly and city ordinance under which the improvement was made, showed that the street was already paved and in public use; and that the heavy outlay involved in the change of pavement, had for its object and purpose the adaptation of the street to the uses of a public drive and carriage way. This, it was contended, proved that the improvement was for public accommodation, not for profit to the contiguous landholders. It may be well questioned whether, if the power exists, the right to exercise it in any particular case must not always be one of legislative discretion; and that under no circumstances can it become a judicial question. But we do not consider it necessary to decide this question in this case. There is nothing in this record which informs us whether or not Royal street, between St. Francis and St. Michael streets, had been previously paved, or otherwise put in condition for use as a thoroughfare. To justify reversal, error must be affirmatively shown. We can not presume the existence of facts, not shown by the record, and make them the basis of reversal.

Section 58 of the act to incorporate the city of Mobile, empowers the city authorities to pave, shell, or plank any street or streets, or part of street : *First*, " whenever they deem it expedient." This at the expense of the city. *Second*, "upon the written application of the owners of at least one-third in quantity of the real estate located on each side of the street or streets, part or parts of a street, which it may be proposed to have thus improved." The act then declares that such paving, shelling, or planking as last above provided for, " shall be done at the expense of the owners of the property located upon any street or part of a street so improved, in such a proportion as that each piece of said property shall pay of the expense of any such improvement a fractional share thereof, equal to its front on any such street or parts of a street so improved."

It will be seen from the above extract that the improvement of streets therein provided for, can be made a charge on the owners of property located on such street or streets, only when the improvement has been applied for, in writing, by the owners of at least one-third in quantity of the real estate adjoining the street proposed to be improved. It is shown that a written application was made in this case to the Mayor, Aldermen and Common Council of Mobile; and that it was signed by the owners of more than "one-third in quantity of the real estate located on each side" of the section of Royal street on which it was proposed to lay the pavement. Indeed, no question seems to have been made in the court below on this point. It is objected, however, that the application does not express that the improvement was to be at the expense of the contiguous land-holders, and therefore it must be construed as an application, such as any citizens of Mobile might make, to have the improvement made at the public expense. We can not assent to this, for the following reasons: *First*, the petitioners describe themselves as "owners of real estate, fronting on Royal street, between St. Francis street and St. Michael street;" the very section they were applying to have improved. *Second*, if the purpose had been to apply for the improvement at the expense of the general public, it is exceedingly improbable that the application would have been signed only by "owners of real estate fronting" on that particular section of a street. *Third*, if the petitioners had not intended to have the improvement made at their expense, it is more than probable that they, to avoid misconstruction, would have asked that it be done at the expense of the city.

It may be conceded, without affecting the result of this case, that until action is had on an application of the kind shown in this record, the parties applying, or any number of them, may revoke such application; and if the result of such revocation be to reduce the ownership represented to less than "one-third in quantity of the real estate located on each side of the street," then the application will not be a compliance with the statute, and the improvement can not be charged on the owners of the property.

The offer of evidence in this case, to the rejection of which exception was taken, was "to show that said Fearne, in his life-time, had revoked his signature on said paper before the work was commenced." There is nothing in the record to show that this revocation took place before the city authorities entered into a contract to have the work done. If such

[Schaffer et al. v. Lavretta et al.]

contract had been previously made, it was then too late to revoke the power. A power, under which others act, is thereby placed beyond the pale of revocation.—*Gibbs & Labuzan v. Frost & Dickinson,* 4 Ala. 720. There was no error, so far as the record informs us, in disallowing the evidence offered.

We do not deem it necessary to notice any other question raised in argument.

We find no error in the record which could have injured the appellant, and the judgment is affirmed.