[Mayor and Aldermen of Birmingham v. Klein.]

# Mayor & Aldermen of Birmingham *v.* Klein.

*Certiorari and Supersedeas in matter of Local Assessment by Municipal Corporation, for Improvement of Side-walks.*

1. *Constitutional restrictions on municipal taxation; local assessments on property for improvement of side-walks.*—The constitutional provision which requires that " all taxes levied on property shall be assessed in exact proportion to the value of such property" (Art. xi, § 1), applies to taxes levied for municipal purposes, through the agency of municipal corporations; and by a further provision (§ 7), the rate of municipal taxation is limited, and it is required to be based on the value of the property as assessed for State taxation during the preceding year. But these are express limitations and restrictions of the general taxing power inherent in the General Assembly, which is never regarded as having been taken away or surrendered by intendment or implication, and which may be delegated to municipal corporations for municipal purposes; and they do not apply to local assessments on property for local improvements, nor prohibit the grant to a municipal corporation of the power to make such local assessments, as for the improvement of side-walks.

2. *Same; charter of city of Birmingham.*—The act approved February 16th, 1885, authorizing the municipal authorities of Birmingham to "improve the side-walks of the city at the cost of parties whose property abuts such side-walks" (Sess. Acts. 1884-5, pp. 620-22`, assessing the expense of such improvements against the owners of the abutting property "in proportion to the amount of the benefit accruing to such abutting owner," and declaring such assessment a lien on the property, is not violative of any constitutional provision. (The cases of *Mobile v. Dargan*, 45 Ala. 310, and *Mobile v. Royal St. Railroad Co.*, 45 Ala. 322, declared opposed to the great weight of authority, and overruled.)

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

The corporate authorities of the city of Birmingham, in September, 1889, made certain improvements on the side-walks of several streets, curbing, graveling, &c.; acting under authority supposed to be conferred by the special statute approved February 16th, 1885.—Sess. Acts. 1884-5, pp. 620-22. The appellee, John Klein, was the owner of two lots abutting on one of the side-walks on which these improvements were made, the costs of the improvements in front of his property amounting to $84.70; and he was thereupon notified to appear before the Mayor and Aldermen, and to show cause why the amount should not be assessed against his property, and declared a lien on it. He appeared,

and objected to the proceedings on legal grounds, but offered
no evidence; and the assessment was thereupon confirmed,
and declared a lien on his property.  He then made appli-
cation for a *certiorari* and *supersedeas* from the City Court,
to review and quash the proceedings.  In that court, on the
return of the writs, a complaint was filed in the name of the
Mayor and Aldermen, setting out the authority under which
they had acted, the improvements made, &c., and asking
that a lien be declared against the defendant's lots for the
amount assessed against them.  The defendant demurred to
the complaint, on the ground that said special statute is
unconstitutional and void.  The court so held, and sustained
the demurrer; and this judgment is here assigned as error.
By agreement of counsel, entered of record in this court, all
defects of form in the pleadings and proceedings were waived,
"and the sole question submitted for decision, it is agreed,
is the constitutionality of said act of the General Assembly
therein referred to."

CABANISS & WEAKLEY, and ROQUEMORE, WHITE & LONG,
for appellant.

JACKSON E. LONG, *contra.*

McCLELLAN, J.—This appeal involves the constitution-
ality of an act "to authorize and empower the mayor and
aldermen of Birmingham to improve the side-walks of the
city of Birmingham, Alabama, at the cost of parties whose
property abuts such side-walks," approved February 16th,
1885.—Sess. Acts 1884-5, pp. 620-622.  Those sections of
the act which are necessary to an understanding of the point
under consideration, are the following:

"Section 1.  *Be it enacted by the General Assembly of
Alabama,*  That the mayor and aldermen of Birmingham
shall have full power and authority to cause and procure all
side-walks along the streets, avenues and alleys now estab-
lished, or hereafter to be established in said city, to be
graded, leveled, curbed, graveled, stagged, re-leveled, re-
curbed, re-graveled, re-cindered, re-paved, or re-macadam-
ized, in such manner, and by such methods, and with such
material, as they may deem best and proper."

"Sec. 2.  *Be it further enacted,* That the said mayor and
aldermen of Birmingham shall have the power to have such
work done, or cause the same to be done, and the expense

[Mayor and Aldermen of Birmingham v. Klein.]

thereof shall, after the completion thereof, be by said mayor and aldermen of Birmingham assessed upon the abutting owners of lands or lots lying along and adjacent to the streets or alleys along which such work is done, in proportion to the amount of the benefit accruing to such owner; and all such assessments shall be and constitute a lien upon the lands and lots respectively upon which they shall be so assessed."

It thus appears that the purpose of the act—and its effect, if valid—is to authorize local assessments against property to pay for pavements constructed along its front, the cost, as between different owners, to be apportioned with reference to the benefits which are assumed to accrue to them severally from the betterment. However the relative benefits are to be determined in a given case, and the sum to be charged on a particular lot ascertained—whether by reference to the superficial area of the property, or the length of its abutment on the side-walk, or the uses to which it is devoted, as being to a greater or less extent facilitated by the improvement, or the enhancement thereby of its value compared with other property subject to the gross assessment—one thing is assured, that the assessment is not made with reference to the *value of the property*, nor with reference to the limitations on the *rate* of municipal taxation. It is manifest, therefore, that if the assessment is a *tax*, within the meaning of the Constitution of Alabama, the statute authorizing it is repugnant to section 1 of Art. XI of that instrument, which requires that "All taxes levied on property in this State shall be assessed in exact proportion to the value of such property;" and also to section 7 of that Article, which provides that "No city, town, or other municipal corporation, . . . shall levy or collect a larger rate of taxation, in any one year, on the property thereof, than one-half of one per centum of the value of such property, as assessed for State taxation during the preceding year."

There is no longer any doubt but that organic limitations on the taxing power, though expressed in general terms, apply as well to the exercise of that power through the medium of municipal corporations, and for municipal purposes, as to its exercise directly by the legislature for State purposes; and hence the requirement that all taxes levied on property in this State shall be assessed *ad valorem* would obtain with respect to municipal taxation, even in the absence of the other provision quoted requiring such taxa-

[Mayor and Aldermen of Birmingham v. Klein.]

tion to be based on the value of property as assessed for State taxation.—*Mobile v. Stonewall Ins. Co.*, 53 Ala. 570. Both the sections noted, therefore, bear upon assessments for municipal purposes; and if either covers the local assessment under consideration, the law authorizing it must fail.

It is a fair, if not necessary inference, that the terms "taxes" and "taxation have respectively the same meaning, wherever found in Art. XI of the Constitution. The "taxes" which must be laid on a basis of value in section 1 constitute the "taxation" referred to for State purposes in section 4, for county purposes in section 5, and for municipal purposes in section 7; and, therefore, the only municipal taxation which the Constitution requires to be assessed in exact proportion to the value of the property, is that embraced in the terms of section 7. The most liberal construction of which the language of that section is susceptible, will not admit of its application to local assessments to provide for local improvements of side-walks. By the very terms employed throughout the Article, the taxes or taxation, whether State, county or municipal, are those which make up the general revenues of the one or the other political division, as the case may be; revenues which come from all the property in the territory, and go to defray general governmental expenditures, as distinguished from special outlays to provide for purely local exigencies. With respect to section 7, this is made to appear with great clearness, by its reference to the property to which the limitation it imposes is made to apply, and by its requirement as to the assessment upon which the municipal levy must be predicated. Not only is the levy by any city to be made "on the property thereof," *i.e.*, the whole taxable property thereof, but it must be made on "such property as assessed for State taxation during the preceding year." No such thing is known, or was known when the Constitution of 1875 was adopted, or had ever been known, as local assessments of property for State taxation. The State assessment, upon which the only municipal levy treated of in the organic law is required to be based, is a general assessment of all property within the corporate limits, and is intended, as the provisos to section 7 show, to provide a fund for the general expenses of the city government. The city's levy there limited must be put upon the whole property taxed by the State, at the valuation fixed by the State's agents. This necessarily and wholly excludes any idea of a local assessment of particular property for any

[Mayor and Aldermen of Birmingham v. Klein.]

purpose, or to be laid in any manner under the Constitution.
Nothing in that instrument refers, or can be made applica-
ble, to such a local charge.   If this species of taxation—for
it is taxation, and referable to the taxing power, though
differing, as we shall see, from the "taxes" and "taxation"
regulated in State constitutions—is to be upheld, it must be
referred to the sovereign power of the General Assembly,
which has been curtailed only to the extent of express con-
stitutional limitations.   If Art. XI contains no inhibition
upon the power of the legislature in respect to local assess-
ments by cities and towns, the act under consideration is
valid, and the assessment involved here was well laid; for no
proposition is now better established in the law, than that
constitutions are not in the nature of enabling acts, but are
limitations upon the otherwise boundless powers of legisla-
tures; or, in other words, that the General Assembly is not
to look to the organic law to ascertain what is permitted it
to do, but only to find what inhibitions are thereby put on
its action.—Cooley's Const. Lim. p. 479; Burroughs' Taxa-
tion, § 145; 2 Dillon Mun. Corp. § 737; *Irwin v. Mobile,*
57 Ala. 6; *Dorman v. State,* 34 Ala. 231; *Hare v. Kennerly,*
83 Ala. 608.

Having attempted to demonstrate that the assessment
here could not have been made *under* the provisions of the
Constitution, either, as it was made, on a basis of benefits,
or even on a basis of the value of the particular property, it
next becomes necessary to determine whether the organic
law is *exclusive* of all other assessments against property
than those of which it treats, in such sort as to amount to a
prohibition upon the legislature in respect to an assessment
of the class under consideration.   It is not questioned but
that the power which this statute undertakes to delegate to
the municipality of Birmingham is a part of the taxing
power inherent in all government, and without limitations
other than those expressed in the organic law.   It is equally
free from doubt, that the power of taxation is never to be
taken to be surrendered by intendment or implication, and
that without an expressed surrender, clear and explicit in its
terms, it must be held to reside undiminished in the legis-
lature.—*Glasgow v. Rouse,* 43 Mo. 479-489; *Baltimore v.
B. & O. R. R. Co.,* 48 Amer. Dec. 531; *Battle v. Mobile,*
9 Ala. 234; s. c., 44 Amer. Dec. 438, n. 441; 2 Dillon Mun.
Corp. § 752.

Are the provisions of Art. XI, referring as we have seen
30

[Mayor and Aldermen of Birmingham v. Klein.]

to general taxes and taxation, and to such only, expressed limitations on the power of the legislature with respect to local assessments on property to pay for local improvements, which benefit that particular property? We think not. The overwhelming weight of authority is against such a construction, and in favor of the validity of such assessments. In considering the question, jurists and judges have proceeded on the theory, that such charges were not taxes in the ordinary sense, or within the meaning and intent of constitutional provisions similar to those of Alabama, but that they are in the nature of compensation for a benefit peculiar to the owner of the abutting property, and traceable to him; that such assessments are not exacted for the general public welfare, and do not go to the support of governmental agencies from the existence and maintenance of which each citizen derives a like benefit, but that they are demandable because the government has expended an equivalent sum in improving the property against which they are laid, and thereby, not the public, but the individual owner of the property improved, has been to that extent the gainer. A tax, it is said, is a contribution to the general fund, the amount of it is taken from the individual, and nothing which benefits him individually, as distinguished from the mass of citizens, is given in the place of it. He pays, and by the amount he pays is poorer than he was before. Not so with an assessment of the class we are considering. The property-owner pays it, but, in legal contemplation, he loses nothing. He receives the value of his money in the betterment of his property, and, in addition to this, he is benefitted to the same extent that all other citizens are, in that a thoroughfare of the city in which his property is situated, and he probably lives, is improved. The authorities almost universally take such an imposition, though confessedly laid under the taxing power, out of the category of taxes and taxation, as those terms are employed in organic limitations on legislative power to levy or authorize the leving of taxes, and in general statutes.—Cooley on Taxation, pp. 626–637; Burroughs on Taxation, pp. 460–463; 2 Dillon Mun. Corp., §§ 752–2, 761 *et seq.; People v. Brooklyn*, 4 N. Y. 420; *Sheehan v. Good Samaritan Hospital*, 50 Mo. 155; *Dorgan v. Boston*, 12 Allen, 223; *Nichols v. Bridgeport*, 23 Conn. 189; *Garrett v. St. Louis*, 25 Mo. 505; *Cain v. Commissioners*, 86 N. C. 8; *Shepard v. Commissioners, Ib.* 552; *Hill v. Higden*, 5 Ohio St. 243; *King v. Portland*, 2 Or. 146; *Norfolk v. Ellis*,

[Mayor and Aldermen of Birmingham v. Klein.]

26 Gratt. 227; *Roundtree v. Galveston*, 42 Texas, 612; *Baltimore v. Cemetery Co.*, 7 Md. 517; *Chambers v. Satterlee*, 40 Cal. 497; *Edgerton v. Green Cove Springs*, 19 Fla. 140; *Goodrich v. Turnpike Co.*, 26 Ind. 119; *Hines v. Leavenworth*, 3 Kan. 186; *Municipality v. Dunn*, 10 La. An. 57; *Motz v. Detroit*, 18 Mich. 495; *Williams v. Commack*, 27 Miss. 209; *Macon v. Petty*, 57 Miss. 378; *People v. Austin*, 47 Cal. 353; *Bridgeport v. N. Y. N. & H. R. R. Co.*, 36 Conn. 255; *Hayden v. Atlanta*, 70 Ga. 817; *Baker Asphalt Paving Co. v. Cogrene*, 5 So. Rep. 848; *Manufacturing Co. v. Tax Collector*, 39 La. An. 461.

On the other hand, the decisions in three or four States are to the effect, that local assessments of this character can not be made under constitutional provisions requiring equality and uniformity of taxation and assessments in proportion to the value of property. The leading case maintaining this view is that of *Chicago v. Larned*, 34 Ill. 203. The conclusion in that case may, perhaps, finds some justification in the peculiar phraseology of the constitutional provision supposed to bear on the question, though an opposite conclusion was reached by the Virginia court on substantially the same provisions.—*Norfolk v. Ellis, supra.* The effect of this Illinois decision was subsequently remedied by an amendment of the Constitution. The Supreme Court of Arkansas, in *Pevy v. Little Rock*, 32 Ark. 31, followed this Illinois decision, and another by the Wisconsin court (*Weeks v. Milwaukee*, 10 Wis. 242, which is, perhaps, also referable to peculiar terms of the Constitution, and which, at most, only imports doubt as to whether the requirement for uniformity of taxation applied to and defeated local assessments), and held such local assessments could not be authorized under a constitution which required property to be taxed uniformly and according to value. This Arkansas decision is not reconcilable with the earlier case of *McGhee v. Mathis*, 21 Ark. 40, on substantially the same point. A like conclusion has been reached in Tennessee and Colorado, but, as in the Illinois case, the terms of the organic law, which were supposed to enforce the result, were something more than general requirements for uniformity and equality of taxation and assessments on the basis of value.—*Palmer v. Way*, 6 Col. 140; *McBean v. Chandler*, 9 Heisk. 349. When to these cases are added those of *Mobile v. Dargan*, and *Mobile v. Royal Street R. R. Co.*, decided by this court (which will be presently considered more particularly), it is

believed that the full array of adjudications against the constitutionality of laws like that involved here is presented. After marshalling the authorities *pro* and *con* on this question, Judge Cooley concludes: "The fact very cleary appears that, while there is not such a concurrence of judicial opinion as would be desirable, the overwhelming weight of authority is in favor of the position, that all such provisions for equality and uniformity in taxation, and for taxation by value, have no application to these special assessments," against abutting property to pay for the construction of sidewalks.—Cooley on Taxation, p. 634.

We now recur to the two cases decided by the Supreme Court of this State, and noted above. They each involve the validity of the same statute, and were decided at the same term; the one being cited as the authority to support the other, and the one thus cited itself being, on this point, unsupported by reference to any authority. Not only is this true, but the opinion essays no argument in support of the conclusion reached, nor enters upon any consideration which it might be supposed a question so important decided, for aught that appears, as upon first impression, would have elicited. In the opinion in *Mobile v. Royal St. R. R. Co.*, moreover, there is an intimation, that had the assessment been by *benefits*, instead of *by frontage*, the act authorizing it would not have been open to the objection of unconstitutionality. Very clearly, if the Constitution applied at all, it would have been equally fatal, whether the assessment were by frontage or by benefits, since neither mode would meet the organic requirement of assessment in exact proportion to the *value* of property. *Mobile v. Dargan*, 45 Ala. 310; *Mobile v. Royal St. R. R. Co.*, *Ib.* 322.

Not only are these cases opposed to the great weight of judicial opinion in other States, and to all authoritative texts, but they are in conflict with a latter adjudication of this court. In the case of *Irwin v. Mobile*, 57 Ala. 6, the act declared in *Mobile v. Dargan* to have been repealed by the Constitution of 1868 again came under review, with reference to an assessment which had been made before that Constitution became the supreme law of the State. This court intimated such doubt of the correctness of the decision in *Dargan's Case* as is implied by citing a preponderating number of authorities holding the opposite view, and by declining to again decide the point, *because* it was not nec-

essary to the case in hand.   The court then proceeds to pass
on the validity of the law authorizing the levy of local assess-
ments *against lands* to pay for improvements upon which
they abut, as brought to the touch of constitutional provisions
of force before the Constitution of 1868.   The conclusion
was, that such a law was not repugnant to the provisions of
the organic law theretofore in force.   Inasmuch as the
Constitutions of 1819, 1861 and 1865, each, contained a
clause requiring that "all lands liable to taxation in this
State shall be taxed in proportion to their value," we are un-
able to escape the conclusion, that the court took the view
held by nearly all other courts, that general organic provisions
for taxation by valuation have no application to local assess-
ments for local street improvement.   Otherwise, it could not
have reached the conclusion announced.   That conclusion,
therefore, is in irreconcilable conflict with the opinion in
*Dargan's Case;* and is no more or less in effect than a later
adjudication by this court that the former decision is unsound.

But, aside from this, the cases of *Mobile v. Dargan,* and
*Mobile v. Royal St. R. R. Co.,* are unsound in principle, and
opposed to the great weight of authority.   It is true the
clause of the Constitution involved in those cases was re-or-
dained after that decision was made; and, ordinarily, the re-
enactment of a law after it has been judicially interpreted,
will be held to impress the judicial construction upon it.
But this is not an universal canon of construction, even
where identically the same language has been employed.
And in this case, while section 1 of Art. XI of the Constitu-
tion of 1875 is identical with section 1 of Art. XI of the Con-
stitution of 1868; yet the presumption that the Convention of
1875 intended that section should bear the construction put
on it in Dargan's case, is rebutted by the succeeding sections
of that Article, which are new to the Constitution of 1875,
and which demonstate that the framers of the present organic
law had in mind, and intended to provide for, regulate and
limit, in and by the ordination of Art. XI, only general
taxation for general government purposes, State, county and
municipal.   The rule of construction referred to, it thus
appears, rests upon a presumption of intention which is
rebutted by the language employed by the makers of the
present Constitution.   We can not give it any operation in
this case, and we can not follow the cases relied on, even
had their soundness not been already drawn in question in
the case of *Irwin v. Mobile, supra.*

The sounder view is that taken in the very numerous cases cited above—and, though very numerous, they are by no means all that so hold—to the effect that provisions, whether in statutes or constitutions, relating to general taxation for State, county and municipal purposes, or either, have no application to special assessments laid against abutting property to pay for street improvements, which have benefitted and enhanced the value of the property so assessed. The statute authorizing such assessments in the city of Birmingham is a valid enactment. The judgment of the City Court involving a contrary ruling is reversed, and the case remanded.

Reversed and remanded.