Appellant Hunter H. Horgan, Jr., a resident property owner of Dauphin Island, initiated the instant litigation seeking declaratory and injunctive relief against the Dauphin Island Water and Sewer Authority, Inc.[1] The Authority, organized pursuant to Code 1975, § 11-88-1, et seq., thereafter filed an answer and counterclaim, seeking: 1) certification of the pending litigation as *Page 1361 
a class action; 2) a declaration that § 11-88-40, et seq., (Article 2, Chapter 88, Title 11, Code 1975, under which the Authority proposes to construct improvements on Dauphin Island), was a general, rather than a local, law; and 3) that the Act lawfully delegated to the authority the power to assess property owners within its service area for the cost of improvements sought to be constructed.
The trial court so certified the proceedings and designated Plaintiff as a proper party to represent all property owners on Dauphin Island who oppose the actions of the Authority.
Following several evidentiary hearings, the trial court entered a final judgment, declaring that the subject Article 2 was a general, as opposed to a local, law; and that such enactment was the valid exercise of the legislative power to grant to a body corporate the authority to assess the cost of sanitary sewer improvements against the property drained, serviced, or benefited thereby to the extent of the increased value of the property by reason of the special benefits derived from the completed improvement.
The thrust of the testimony and documentary evidence establishes the following uncontested facts:
1. Article 2 (Act 826) was adopted as a general, rather than a local, law; therefore, it was not advertised pursuant to Section 106, Constitution of Alabama 1901 — the requisite procedure for passage of a local act.
2. The Authority was organized in proper form pursuant to the terms of that Act. Further, the Authority followed all of the required statutory procedures in preparation for construction of a sanitary sewer system on Dauphin Island.
3. Because of health requirements, based upon studies and recommendations by the Mobile County Health Department and the Environmental Protection Agency, a sanitary sewer system is essential to the present needs of the residents of Dauphin Island and to the island's future growth and development.
Appellant's brief, attacking the constitutionality of the statutes under which the Authority was organized, places the "local versus general law" dichotomy in perspective by the following brief review of the statutes' legislative history:
 "Section 11-88-1 through -21 was originally adopted as Act No. 107, Acts 1965, 1st Ex.Sess. That law provided for the establishment of fire, sewer and water systems and service areas throughout the State of Alabama. . . . Act Number 107 [Art. 1] was passed as a general law and that status is not questioned by Appellant.
 "In 1973, Act No. 107 was amended by Act No. 826 which added § 11-88-40 through -111 [Article 2] to the original law. This act [was] also passed as a general law without first fulfilling the requirements of [the Constitution.]"
Thus, contends Appellant:
 "[Act No. 826] provided for the creation of a new and different authority with only one function, the construction of a sanitary sewer system, which Authority could be established only in a narrowly defined geographic area and which, as distinguished from Authorities created under the other portions of the act, possessed the power to levy taxes.
 "The fact that Act No. 826 is amendatory of or supplemental to an admittedly general law will not save it if it is in fact a local act as defined in Section 110 of the Constitution. Stone v. State, 233 Ala. 239 [171 So. 362]
 "Act No. 826 is a local law for three distinct, but interrelated reasons. First, it is local in that it does not, `* * * in its term and effect [apply] to the whole state. . . .' . . . Secondly, it is a law which limits the scope of its geographical operation by designation rather than classification. Finally, the `classification' sought to be created therein is arbitrary and bears no relation to the purpose to be effected by the act.
 "Prior to its amendment in 1978, Article IV, Section 110 of the Constitution *Page 1362 
defined a local law as one `which applies to any political subdivision or subdivisions of the state less than the whole.' In Peddycoart v. City of Birmingham, Ala., 354 So.2d 808, this Court held that the section in question meant exactly what it said and that a statute, `* * * If, when it becomes law, [it] applies only to the subdivision of the state, it is a local law.'
 "At this juncture, the obvious question is whether Act 826 applies to less than the whole state. The answer to that question is to be found in an analysis of the act itself and prior case law."
The Authority, citing Burns v. State, 246 Ala. 135,19 So.2d 450 (1944), and Brandon v. State, 233 Ala. 1, 173 So. 238
(1936) (cases involving a § 106 challenge), claims mootness of the "local law" issue.
The asserted ground for mootness need not be addressed, and this for the reason that, as to the threshold issue on the merits, we hold that Section 106's advertisement requisite is inapplicable, because Act No. 826 is a general law. The Act (Article 2, § 11-88-40, et seq.) empowers an authority organized under Article 1 (§ 11-88-1 through -21), with the consent of the county governing body, to construct and maintain improvements within "that part of its service area that is a resort area," and to assess against the property benefited therefrom the cost of such abutting improvements. We find no geographical or territorial limitations inherent in the Act. Provisions of the Act restricting "resort area" to "an area located outside the corporate limits of any municipality" merely avoids conflict between the empowered authority and other entities properly exercising this power. See § 11-48-1,et seq.
Nor does the restrictive scope of operation of Article 2 violate constitutional standards. State ex rel. Montgomery v.Merrill, 218 Ala. 149, 117 So. 473 (1928), speaks to this point:
 "It of course frequently occurs that in practical operation a general law will necessarily affect one section of the State to a greater extent than another — such, by way of illustration, laws regulating coal mines having vital effect in industrial sections but of less concern in rural communities, and likewise laws regulating oyster culture, and numerous other illustrations that might be given." Merrill, 218 Ala. at 152, 117 So. 473.
An act relating to sewer service in resort areas no more partakes of the nature of a local act than does an act relating to the production of oil and gas. Not every county has, or may ever have, a resort area; nor is it reasonably contemplated that every county will ever have an oil or gas well. These circumstances, nevertheless, do not make either act a local law.
On the other hand, an act that, by its terms, applies to less than the whole State, or whose application is necessarily restricted to a given territory less than the whole, cannot be spared Section 106's proscription. For example, an act regulating fishing gear in the streams lying within the watershed of Elk River is necessarily restricted in its application to less than the whole State and cannot be treated as a general law. See Opinion of the Justices, 278 Ala. 98,176 So.2d 29 (1965), and State v. Lash, 350 So.2d 748 (Ala.Cr.App. 1977).
Next, Appellant contends that the assessment provision of Act No. 826 transgresses the prohibition of Section 212 of the State Constitution:
 "`The power to levy taxes shall not be delegated to individuals or private corporations or associations.'"
Citing Collins v. Hollis, 212 Ala. 294, 102 So. 379 (1924), and Opinion of the Justices, 275 Ala. 386, 155 So.2d 343
(1963), Appellant asserts:
 "There is no question that the ban on delegation of the power to tax extends to the Authority created under Act 826 since that Authority is not a county or a municipal corporation."
The Authority answers:
 "[Appellant's] argument must fail for two reasons. First, assuming arguendo that special improvement assessments are part of the constitutional taxing power *Page 1363 
within the meaning of section 212, amendments 15, 22 and 257 to the Alabama Constitution, in their cumulative effect provide an exception to Section 212 sufficient to sustain Article 2. Second, almost universal authority, including decisions of this Court, recognizes that legislation concerning special improvement assessments like Article 2 is not subject to constitutional limitations on the taxing power because these assessments are not taxes in the constitutional sense."
We reject the first and accept the second of the Authority's grounds for affirmance as to this issue. The Authority's brief contains the following succinct analysis of the problem:
 "Plaintiff asserts that Article 2 is in violation of Section 212 of the Alabama Constitution as interpreted by this Court in Collins v. Hollis, 212 Ala. 294, 102 So. 379 (1924).[2] . . .
 "In response to this Court's decision in Collins v. Hollis, 212 Ala. 294, 102 So. 379 (1924), amendment 15 to the Alabama Constitution was ratified on November 15, 1924. This amendment attempted to authorize the Legislature to enact legislation providing for the formation of drainage districts to construct improvements and assess the cost of these improvements against the land increased in value by reason of the benefits derived from the improvements. This Court remained unconvinced, however, and ruled in State v. Grayson, 220 Ala. 12, 123 So. 573 (1929) that although amendment No. 15 was constitutional, the assessment power could be delegated only to counties and not to drainage districts despite the express language of the amendment. 220 Ala. at 18
[123 So. 573]. The decision in State v. Grayson was limited to the effect of amendment No. 15 on the Alabama Constitution . . . Amendment No. 22 was not considered in the State v. Grayson opinion at all.
 "Amendment No. 22, ratified on November 17, 1928, attempts to clarify the intent previously expressed in amendment No. 15, thereby supplanting this Court's decision in State v. Grayson, 220 Ala. 12, 123 So. 573 (1929). . . .[3]
". . .
 "To further broaden the constitutional scope of the legislature's ability to establish local improvement districts with the authority to assess property for the cost of the improvements, constitutional amendment No. 257 was ratified on November 17, 1966.[4] *Page 1364 
". . .
 "The cumulative effect of amendments 15, 22 and 257 is to constitutionally empower the legislature to establish `drainage districts' for the development of a `drainage system' and `water management districts for the establishment of works of improvement for . . . the conservation, development, utilization, and disposal of water within the state.' The question becomes therefore whether these three amendments apply to the legislation at issue in the present action."
The parties cite numerous authorities, including several dictionary references, for their respective positions regarding whether a "drain" is a "sewer" and vice versa. We hold, consistent with the Appellant's argument, that constitutional Amendments 15, 22, and 257 do not embrace the activities which Authorities organized pursuant to Article 1 are empowered to perform. In other words, the "drainage system" improvements for which assessments are authorized by these constitutional amendments are separate and distinct functions from the "sewer and water" improvements authorized by Article 1 and for which property assessments are permitted by Article 2. The definition section of Article 1, as well as the substantive content of Article 2, make clear that the terms "sewer service" and "sewer system," respectively, refer exclusively to "sanitary sewage" and "a sanitary sewer system." The precedents cited by the Authority equating the two terms "drain" and "sewer" are unimpressive in the context of clear and unequivocal language that distinguishes the applicable constitutional provisions from the challenged legislative enactment.
These amendatory provisions of the Constitution speak, interalia, to the management and disposal of excess surface water, while the subject legislation authorizes, inter alia, private corporations to deal with the problem of treatment and disposal of sanitary sewage. Moreover, the Authority's insistence that the only distinction between the terms "drain" and "sewer" is that the former applies to rural environments and the latter applies to cities[5] loses its force of persuasion in light of Article 2's restrictive application to "only land which has been subdivided and platted." In other words, an extensive degree of urbanization is a prerequisite to the Act's applicability; thus, the Authority can hardly be allowed to take refuge in the "rural community" rationale of the older precedents in its effort to bring the "sewage" language of the challenged Act in line with the "drainage" language of the constitutional amendments.
Finally, we address what we perceive as the most difficult of the issues presented: *Page 1365 
Given the constitutionality of Article 1 — authorizing the formation of a corporation to construct and maintain a sanitary sewage system under the instant circumstances — but without the aid of Constitutional Amendments 15, 22, and 257 — dealing with drainage, not sewage systems — does the assessment provision of Article 2 run afoul of Section 212 of the State Constitution, prohibiting the delegation to private corporations of the power to levy taxes? If the assessment authorized by Article 2 is a tax, the question is self answering — it is unconstitutional.
Assuming the above-stated premise, the Authority does not contend otherwise; nor does it deny the holding of Collins v.Hollis, supra, that the power to levy assessments is part of the taxing power, limited to municipal corporations by Section 212. Rather, the Authority contends:
 "As Justice Gardner noted in his dissent in Collins, however, based on this Court's unanimous decision in Mayor and Aldermen of Birmingham v. Klein, 89 Ala. 461, 7 So. 386 (1889) (construing § 2 of the Alabama Constitution (1875), the predecessor of § 212 of the Alabama Constitution (1901)):
 "`[P]rovisions either in statutes or constitutions relating to general taxation, whether for state, county, or municipal purposes, have no application to special assessments made against the abutting property for street improvements, which have been benefited and enhanced thereby, to the value of the property so assessed [212 Ala. at 299, 102 So. 379].'
 "The rationale for this rule, as explained by Justice Gardner, is that the part assessed receives a specific benefit equal to the amount of the assessment as distinguished from a tax for which he receives no specific benefit:
 "`The principle underlying special assessments to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they received by reason of such improvement. [212 Ala. at 299
[102 So. 379] (quoting City Council of Montgomery v. Birdsong, 126 Ala. 632, 28 So. 522 (1900) quoting Norwood v. Baker, 172 U.S. 269
[19 S.Ct. 187, 43 L.Ed. 443] (1898)).]'"
After careful and deliberate study of each of the cases and treatises cited by counsel for the respective parties, as supplemented by own independent research, we are constrained to overrule Collins and adopt Justice (later Chief Justice) Gardner's dissent in that case.[6] The problem we encounter withCollins lies in what we perceive as its own inconsistency. While its facial holding appears palpable, its rationale is totally out of tune with this Court's treatment of the special improvement assessment/taxation dichotomy in all other contexts. This is the very point of Justice Gardner's dissent in Collins and what undoubtedly prompted his reliance upon language from the earlier case of Mayor and Aldermen v. Klein,89 Ala. 461, 7 So. 386 (1889):
 "Are the provisions of [§ 212], referring as we have seen to general taxes and taxation, and to such only, expressed limitations on the power of the legislature *Page 1366 
with respect to local assessments on property to pay for local improvements, which benefit that particular property? We think not. The overwhelming weight of authority is against such a construction, and in favor of the validity of such assessments. In considering the question, jurists and judges have proceeded on the theory, that such charges were not taxes in the ordinary sense, or within the meaning and intent of constitutional provisions similar to those of Alabama, but that they are in the nature of compensation for a benefit peculiar to the owner of the abutting property, and traceable to him; that such assessments are not exacted for the general public welfare, and do not go to the support of governmental agencies from the existence and maintenance of which each citizen derives a like benefit, but that they are demandable because the government has expended an equivalent sum in improving the property against which they are laid, and thereby, not the public, but the individual owner of the property improved, has been to that extent the gainer. A tax, it is said, is a contribution to the general fund, the amount of it is taken from the individual, and nothing which benefits him individually, as distinguished from the mass of citizens, is given in the place of it. He pays, and by the amount he pays is poorer than he was before. Not so with an assessment of the class we are considering. The property-owner pays it, but, in legal contemplation, he loses nothing. He receives the value of his money in the betterment of his property, and, in addition to this, he is benefited to the same extent that all other citizens are, in that a thoroughfare of the city in which his property is situated, and he probably lives, is improved. The authorities almost universally take such an imposition, though confessedly laid under the taxing power, out of the category of taxes and taxation, as those terms are employed in organic limitations on legislative power to levy or authorize the levying of taxes, and in general statutes. [Citations omitted.]" 89 Ala. at 465-66, 7 So. 386.
Subsequent to Collins, Klein's theory of special improvement assessments was noted with approval in Bradford v. City ofHuntsville, 215 Ala. 591, 112 So. 200 (1927), where it was observed that the holding that assessments are not taxes in the constitutional sense is "in agreement with authorities everywhere and has been followed by this Court."
This observation is verified by two renowned treatise writers in the field of municipal law:
Yokley, Municipal Corporations § 549 (1958):
 "The decisions clearly indicate that there is a distinction between taxes and special assessments. Many authorities affirm the principle that special assessments do not constitute taxes.
 "It is thought not debatable that apportionments of the costs of road improvements to the lots and pieces of land lying within a road benefit district created by a city ordinance are not taxes within the purview of a constitutional provision, but are special assessments, for it has been held early and late that an assessment against property by reason of benefits derived from a public improvement is not, in the constitutional sense, a tax.
". . .
 "[A] special assessment for benefits is not a tax within the constitutional concept of the word `tax' and such an assessment is not subject to the constitutional limitations on taxation. Constitutional provisions dealing with the uniformity of taxation do not apply to special assessments [footnotes omitted]."
McQuillin, Municipal Corporations § 38.01 (1970):
 "Local assessments or special taxes for the payment of the cost of certain kinds of public improvements commonly prevail and are generally sustained under the exercise of the power of eminent domain, and hence constitutional provisions respecting this right have no application. They differ also from general taxes, since *Page 1367 
they are not a tax at all in the constitutional sense or as taxes are generally understood. . . . Provisions relating to taxation generally are uniformly held not applicable to local assessments or special taxation for improvements. [See McQuillin's footnote 9.]"
Collins, then, carved out an exception to the general rule; or, perhaps more accurately stated, it created a double standard for measuring the imposition of an "assessment" as a levy of taxes: One, in the context of an improvement assessment imposed by a municipality; and the other, in the context of an improvement assessment imposed by a legislatively authorized non-municipal corporation.
We find no rational basis for the formulation, or for the application, of different tests in determining whether the imposition of an improvement assessment constitutes the levy of taxes. If an improvement assessment by a city is not a tax under the Klein test, then, likewise, under the same test, the imposition of a special assessment for a sewer improvement against abutting property by a corporation organized pursuant to legislative enactment is not a tax. It is the nature and character of the improvement, and the type and object of the levy against the property so improved, not the entity imposing it, that determines whether such levy is a special improvement assessment or a tax.
Stated another way, the determining factor is not whether the Authority empowered by the legislature to construct the sewer system, and levy against the improved property to collect its costs, is a county, a municipality, or other corporate entity; rather, the test centers on the type of levy imposed. If the uniform application of that test results in a determination that the levy imposed is an assessment and not a tax, and that its imposition is otherwise legally authorized, it will be constitutionally validated without regard to the identity of the entity imposing it. If, on the other hand, under the Klein
test (as restated by Justice Gardner's dissent in Collins), the levy is a tax and not a special assessment, its imposition will be constitutionally validated only if the imposing authority is a municipality (or other sovereign authorized to levy taxes).
Unquestionably, the Klein test for a special improvement assessment is met in the instant case. The Article authorizes the assessment against only "the property abutting on or drained, served, or benefited by such improvement to the extent of the increased value of the said property by reason of the special benefits derived from the said improvement." §11-88-42. The Authority, then, is empowered to assess the costs against only that property which is peculiarly benefited beyond the incidental benefit of the sewer system improvements to the community in general, and only to the extent of the increased value of the property so improved. In the words of Justice Gardner: "The owners do not, in fact, pay anything in excess of what they receive by reason of such assessment."
We hold, therefore, that the trial court did not err in upholding the constitutionality of the challenged statutes.
AFFIRMED.
All the Justices concur.
[1] The last amended complaint named as parties defendant Dauphin Island Water and Sewer Authority, Inc., and its individual directors. For convenience, the Defendants are referred to as the Authority.
[2] Opinion of the Justices, 275 Ala. 386, 155 So.2d 343 (1963), cited by Appellant, is inapplicable to the present proceeding, because it deals with a license tax rather than a special improvement assessment.
[3] Constitutional Amendment No. 22:
 Section 1. The Legislature may form or provide for the formation of drainage districts for establishing and maintaining drainage systems; and provide for the assessment of the whole or part of the cost of such improvements against the land and property in such districts to the extent of the increased value thereof by reason of special benefits derived from such improvements and may provide for the issuance of bonds for such districts with or without an election.
 Section 2. This amendment shall be retroactive and retrospective and shall operate to ratify, confirm and validate the act of the legislature of Alabama, which act provided for the drainage of farm, wet, swamp and overflow land in the State of Alabama and authorized the organization of drainage districts, conferred the right of eminent domain to the extent necessary to carry out the purpose of said act and provided for raising of revenues by bond issue or otherwise to pay the cost and expense of installing and maintaining drainage systems so as to promote the public health and general welfare and, which act was approved March 4, 1915; and this amendment shall operate to confirm and validate all corporate organizations under the authority of such law, all procedure had, all acts done, all bonds issued, contracts entered into and assessments made by such corporations under authority of such law.
[4] Constitutional Amendment No. 257:
 Section 1. The legislature may provide for the formation of water management districts for the establishment of works of improvement for the drainage of wet, swamp, and overflowed lands of the state, and for flood prevention or the conservation, development, utilization, and disposal of water within the state; confer the right of eminent domain for such purposes, provide for the taxing of the whole or part of the cost of such improvements against the land and property in such district to the extent of the increased value thereof by reason of special benefits derived from such improvements; and provide for the issuance of bonds for such districts with or without an election; provided, however, that nothing herein shall authorize any such water management districts to engage in or finance, directly or indirectly, the production, transmission or sale of electric power.
 Section 2. The provisions of this amendment are cumulative and shall not be construed to repeal amendment XV [15] or amendment XXII [22].
[5] This argument is to the effect that the "open" nature of the conduit which characterizes rural drainage, as opposed to "closed" conduits in urban areas, is an insufficient distinction to warrant a different legal treatment of the two terms; thus, because "no part of the resort area . . . lies within the corporate limits of any municipality," the terms "drain" and "drainage," as used in the constitutional amendatory language are sufficient to include the terms "sewer" and "sewage" in the context of the Authority's power to construct and maintain a sewer system (and assess the abutting property for its costs) pursuant to Articles 1 and 2. This "open/closed" distinction — the rationale for which equates, rather than differentiates, the terms "drainage" and "sewage" — found favor in the earlier cases of the late 1800's addressing this issue. The urbanization process of the 1900's forced an abandonment of this earlier rationale. Indeed, the evolution which marks the modern trend to treat "sewers" and "drains" as separate and distinct matters without regard to their city or rural application is signaled by Black's LawDictionary: While its 4th edition states, "`Sewers' differ from `drains' only in that the former are in cities, and generally covered over, while the latter are in rural communities and open . . .", its 5th edition treats the terms "`drain' and `drainage districts' as referring to the diversion of superfluous moisture from property and the reclamation of wet lands."
[6] Except for the broad language in Collins, supra (and its progeny), its holding, when confined to its peculiar facts, is susceptible of being distinguished from the instant case.Collins and its progenitor (Bradley v. State, 210 Ala. 166,97 So. 543 (1923)) each dealt with legislative enactments (the Public Roads Act in Bradley and the Drainage Districts Act inCollins) which authorized "assessments" beyond the immediate improvement authorized under each act. In Bradley, the act authorized "assessments" against all property within the Road District. In Collins, the act authorized "assessments" againstall property within the Drainage District. The Act in each case authorized the imposition of the "assessment" on all the lands in the district, limited only "in proportion to the benefits received by reason of such improvements." Bradley, at 166,97 So. 543. Put another way, our overruling of Collins is not to be interpreted as authorizing a nonmunicipal coporation to assess and collect taxes — a function constitutionally reserved to the sovereign — under the mere guise of an "assessment."