(No. 12759.—Reversed in part and remanded.)

THE HAYES BRANCH DRAINAGE DISTRICT, Defendant in Error, *vs.* THE ILLINOIS CENTRAL RAILROAD COMPANY *et al.* Plaintiffs in Error.

*Opinion filed October 27, 1919—Rehearing denied Dec. 5, 1919.*

1. DRAINAGE—*when error in description is not sufficient to set aside order establishing sub-district.* Where the original petition for the organization of a sub-district is sufficient to give the court jurisdiction of the persons and subject matter, an error in the description of the boundaries in the final order for organization will not divest the court of jurisdiction nor justify setting aside the order establishing the district, where the land is so described and its boundaries set forth that it is certain what land is intended to be included. (*Drummer Creek Drainage District* v. *Roth*, 244 Ill. 68, distinguished.)

2. SAME—*plans and specifications attached to petition need not be introduced in evidence.* Where the plans, profiles, specifications and estimate for the organization of a sub-district are filed with the petition and are made a part thereof as a special report they become as much a part of the record as the petition itself, and it is not necessary to specifically introduce them in evidence in the proceeding for organization.

3. SAME—*when a portion of railroad right of way may be included in sub-district.* A portion of the right of way of a railroad company may be included in a sub-district for drainage purposes where it appears that the land included is rented for agricultural purposes and will receive some benefit for the purpose to which it is devoted, although there is no satisfactory proof that the right of way will be benefited for railroad purposes.

4. SAME—*the extent of benefit does not determine whether lands shall be included in sub-district.* In determining what lands shall be included in the organization of a sub-district the question is not how much the lands in question will be benefited by the proposed improvement but whether or not they will receive any benefit, and if they will, they may properly be included in the district and the extent of benefit will be determined when the lands are assessed.

5. SAME—*fact that certain lands are omitted from sub-district will not defeat its organization.* In a proceeding for the organization of a sub-district the fact that certain lands are omitted from the district which the proof shows will be benefited by the drainage will not defeat the organization of the lands included, as the

statute does not require that all lands which will be benefited must be included in the first instance but provides a means for adding to a district such omitted lands. (*Hansmeyer* v. *Indian Creek Drainage District*, 284 Ill. 458, followed.)

WRIT OF ERROR to the County Court of Douglas county; the Hon. D. H. WAMSLEY, Judge, presiding.

GUY R. JONES, EDWARD C. CRAIG, JAMES W. CRAIG, JR., and DONALD B. CRAIG, (JOHN G. DRENNAN, of counsel,) for plaintiffs in error.

DOBBINS & DOBBINS, for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This writ of error is prosecuted by the Illinois Central Railroad Company to review an order of the county court of Douglas county establishing a sub-district in the Hayes Branch Drainage District of that county, which sub-district includes a portion of its right of way. The proceeding was commenced by the commissioners of the district, who filed in the county court of Douglas county their special report and a petition for the organization of a sub-district within the boundaries of the original district. The petition set forth that there were lands in a particular locality in said district which were in need of more minute and complete drainage, describing the lands proposed to be included in the sub-district, and that the commissioners had made an examination of the lands and plans and specifications for a system of drains and ditches for the proposed sub-district. The plans and specifications for the proposed improvement were made a part of the special report and filed with it.

The Hayes Branch Drainage District of Douglas county was organized several years ago as a drainage district under the Levee act. It consists of a main open ditch about seven feet deep and 30 feet wide, which runs from the northwest in a southeasterly direction and crosses the Illinois Central

railroad right of way at a point about 300 feet north of
the intersection of the north boundary line of the proposed
sub-district with the right of way of said railroad company.
The ditch crosses the right of way from west to east and
then runs southerly along the east line of the right of way,
about one-half of the open ditch being upon said right of
way. The east line of the proposed sub-district as set forth
in the petition coincides with the east line of the right of
way of the railroad. John Knobloch owns about 180 acres
of land lying immediately west of the railroad, situated in
section 22, township 16, north, range 8, east of the third
principal meridian, in that county. His lands are in need
of better drainage and are the ones which will receive the
most benefit from the organization of the proposed sub-
district. At the present time there are three strings of tile
running from his land across the right of way of the rail-
road company. These tile drains, apparently, were con-
structed before the drainage district was organized. The
first (or north) drain is of 10-inch tile and crosses the
right of way at a point about 1800 feet south of the north
line of section 22. The second (or central) drain is of
10-inch tile and crosses the right of way about 2500 feet
south of the north branch. The third (or south) drain is
of 8-inch tile and crosses the right of way about 300 feet
north of the south line of the proposed sub-district. The
right of way of the railroad company is 200 feet in width
where it runs through the district and its tracks are laid on
an embankment some seven or eight feet in height. The
west line of the embankment is about 70 feet east of the
west line of its right of way. At the point where the
south drain crosses the right of way a cast-iron pipe three
and a half to four feet in diameter has been placed under
the railroad embankment. The bottom of this pipe is some
18 inches below the natural surface of the ground. It
constitutes the only outlet for surface water through the
railway embankment within this sub-district. The work

proposed to be done is the construction of a main tile drain and two branches. The main drain is to be about 2650 feet in length, consisting of 920 feet of 8-inch, 700 feet of 10-inch, 800 feet of 12-inch and 200 feet of 16-inch tile. It is to be run in a southeasterly direction through a part of the Knobloch land and across the right of way of the railroad at the place where the central drain now crosses the same. All of this string of tile, except the 180 feet immediately adjoining the outlet on the railroad right of way, is to be laid on the Knobloch land. Branch No. 1 is to be of 10-inch tile and about 950 feet in length. It will commence at a point 300 feet north of the south boundary line of the sub-district, at a point about 250 feet west of the west line of the railroad right of way, and run north to join the main drain at the place where it crosses the right of way of the railroad. Branch No. 2 is to be of 10-inch tile and about 1700 feet in length. It is to commence about 200 feet west of the west line of the right of way of the railroad at a point opposite the point where the north drain now crosses the railroad right of way, and run southwesterly, parallel with the right of way of the railroad company, until it intersects the proposed main drain. Branches No. 1 and No. 2 are to be laid entirely upon the Knobloch land. The only work proposed to be done on the lands of the railroad company is the construction of the main tile drain in an easterly direction across its right of way for a distance of approximately 180 feet, and to construct a concrete head-wall about 45 or 50 feet east of the east side of the railroad embankment at a point where the present central drain empties into the main open ditch. The purpose of this wall is to prevent washing out and caving in of the bank of the main ditch at the point where the water from this tile drain empties into the main ditch.

The first point urged against the validity of the order establishing the district is that the order does not correctly describe the boundaries of the proposed sub-district. The

order finds the lands that will be affected by the proposed work to be as follows: Carrie Rahn, south quarter of southeast quarter of southeast quarter of section 16, containing 10 acres. Thomas Hulse, east 60 acres of northeast quarter of section 21. John Knobloch, all that part west of the railroad in section 22, containing 180 acres. The Illinois Central Railroad Company, west half of the right of way in section 22, containing 12 acres, and a strip across the east half of the right of way four rods wide, being two rods on each side of the proposed ditch; and certain public roads in the town of Tuscola adjoining said lands,—all in township 16, north, range 8, east of the third principal meridian, Douglas county, Illinois. It then describes the boundaries of the district as "beginning at the southwest corner of section 22, township 16, north, range 8, east of the third principal meridian, in Douglas county, Illinois; thence north one-half mile; thence west sixty rods; thence north nine-sixteenths of a mile; thence east one-fourth of a mile and thence south one-sixteenth of a mile to the northwest corner of said section 22; thence east," etc., the description continuing with its various boundary lines to and along the railroad and then west to the place of beginning. The error complained of is the omission of one distance of one-sixteenth mile. Instead of running the boundary line north nine-sixteenths of a mile and thence east, it should have been run north eight-sixteenths or one-half mile, thence west one-sixteenth mile, thence north one-sixteenth mile and thence east one-fourth mile, and thence south one-sixteenth mile, where it would have met the northwest corner of section 22. The error placed the northwest corner of the district twenty rods east of where the land description placed it, thereby omitting from the west end of the Carrie Rahn tract a square of about 2½ acres and including such a square at the east of said tract, thus making the boundary line of the district intersect the north line of section 22 at a point twenty rods east of the northwest corner of that section, instead of

meeting the northwest corner of said section as described. It is insisted that this description is so indefinite and insufficient that the order establishing the district is void.

In this connection our attention is called to *Drummer Creek Drainage District* v. *Roth,* 244 Ill. 68, which is said to be decisive of this question. In that case the error complained of was made in the description of the boundaries of the district in the petition filed for the organization of such district. The petition described the boundaries as commencing at the north line of section 10, giving the township and range, etc., and thence south to the south line of section 15, and continued with a description of its various boundary lines, concluding with, "then west to the place of beginning," but fixed no definite starting point on the north line of section 10. As the petition was drawn it would permit a variation in the boundary lines sufficient to make a difference of approximately 1280 acres of land in the district. It was there pointed out that a petition signed by the requisite number of owners representing the area required by statute was jurisdictional, and that the petition filed was defective both as to its boundaries and the number of land owners and was insufficient to give the court jurisdiction to proceed with the organization of the district. Such is not the case in the record before us. Here the petition filed contained a correct description of the land the commissioners thought should be included in the proposed sub-district, and the error complained of was made in the final order entered by the court, wherein it attempted to modify the description of the lands as set forth in the original petition so as to exclude from the sub-district certain lands owned by Rahn and Hulse. The original petition filed was sufficient to give the court jurisdiction both of the persons and the subject matter of the cause and authority to proceed with the organization of the sub-district. The error made in the description of the boundaries of the sub-district in the final order did not operate to divest the

290 — 9

court of the jurisdiction it acquired by the filing of the original petition. The case before us is different from the *Drummer Creek case, supra,* in that the court never acquired jurisdiction in that case, while in this case the court thus acquired full jurisdiction both of the persons and the subject matter of the action but committed an error in the description of the boundaries of the proposed sub-district in the final order entered in the exercise of that jurisdiction. What was said in the *Drummer Creek case, supra,* has no bearing on the question presented here.

While the description of the boundaries of the district is erroneous the error complained of is evidently a clerical one and is of such a character that it could have been cured in the court below had attention been called to it in that court. It does not go to the jurisdiction of the court and in our opinion is not of such a character as would justify a setting aside of the order establishing the sub-district. It contains a description of the lands included in the sub-district, and as the land is described and its boundaries set forth no one could be misled as to what lands were intended to be included in the sub-district.

The next point made is that the commissioners failed to introduce in evidence the plans and specifications of the proposed improvement. Section 59 of the act under which the sub-district was organized (Hurd's. Stat. 1917, p. 1109,) provides, among other things, that the commissioners shall make an examination of the lands that are in need of more efficient drainage, and lay off and make plans and specifications of such additional work, and the estimate of the cost of the same, and make a special report of such matters to the court, wherein they shall describe all of the lands to be benefited or damaged by such additional work, together with the names of the owners, etc. In the case before us the commissioners made this special report, in which they set forth that they had "examined the lands to be affected by the proposed work" and "caused to be prepared plans,

profiles and specifications of the proposed additional work therein and an estimate of the cost thereof, which plans, profiles, specifications and estimate  *  *  *  are herewith filed and by reference made a part of this special report and petition." In our opinion the plans, profiles, specifications and estimate thus referred to and filed with the petition were as much a part of the record in that cause as the petition itself, and it was no more necessary to specifically introduce the same in evidence than it would have been to offer the special report and petition itself, which form the basis for the proceeding.

It is next insisted that the lands of the railroad company will not be benefited by the proposed improvement and for this reason they should not have been included in the proposed sub-district. The proof shows that a portion of the right of way included in the sub-district is rented to tenants for agricultural purposes and that water stands on some parts of this land for a part of the time after heavy rains; also that there is a washing out or a caving in of the bank of the main ditch at the point where the central drain empties into it and that this is to be prevented by building a concrete head-wall at that point, and that it is necessary, in order to procure an outlet for the main ditch of the sub-district, to pass through the embankment of the railroad company. Section 59 permits the inclusion of all lands in a sub-district which will be benefited by the drainage system of the proposed sub-district, and of all lands over which the proposed ditches or drains of such sub-district are to be constructed. While there is no satisfactory proof in the record that the right of way will be benefited for railroad purposes, it does appear the company's lands will receive some benefit for the purpose to which they are devoted other than railroad purposes, and that it will receive some benefit by the construction of the head-wall, which will prevent the further washing away of the banks of the main ditch before it reaches the railroad em-

bankment. In cases of this character the question is not how much the lands in question will be benefited by the proposed improvement, but whether or not they will receive any benefit. If they will, they may properly be included in the district, leaving the question of the extent of benefit for determination when the land is assessed and the tax extended. In our opinion there is sufficient evidence in the record to warrant the inclusion of the portion of the railroad's right of way in such sub-district.

It is further contended that certain lands are included in the order organizing the district which were not mentioned in the original petition and as to which no findings were made, and that certain other lands are omitted from the district which the proof shows will be benefited by the proposed improvement. We gather from the record that the latter tract is the portion of the Carrie Rahn lands which was erroneously omitted in the description of the boundaries of the district in the final order entered by the court. In our opinion neither of these objections is well taken. Section 60 of the act provides, whenever the proceeding for the organization of a drainage district or any assessment of damages or benefits is invalid as to one or more tracts, or any tract has been omitted by reason of clerical error, mistake or want of proper notice, the same shall not invalidate the proceedings or assessment but that a new proceeding may be commenced by the commissioners against the owners of such land to have such land properly included in the district and assessed. And in *Hansmeyer* v. *Indian Creek Drainage District,* 284 Ill. 458, where similar objections were urged, we held the statute did not require that all lands that will be benefited must be included in the district, as it provides a means for adding to a district such omitted lands. The conclusion reached in that case is controlling here.

By reason of the clerical error in the description of the boundaries of the sub-district in the final order the judg-

ment will be reversed and the cause remanded to the county court of Douglas county, with directions to amend the order entered by making the proper correction in the description of the boundaries of the sub-district. In all other respects the judgment of the county court will be affirmed.

*Reversed in part and remanded, with directions.*