(123 So. 573)
STATE ex rel. GARROW et al. v. GRAYSON, Judge. (1 Div. 539.)

Supreme Court of Alabama. June 27, 1929.

Hamiltons and Smiths, Young & Johnston, and Jesse F. Hogan, all of Mobile, for relators.

E. J. Grove, of Mobile, for respondent.

14

THOMAS, J. The petition is for prohibition or other appropriate writ directed to the judge of the circuit court, seeking to have dismissed a pending cause sought to be appealed from the probate to the circuit court.

The original petition for the formation of a sea wall drainage district was presented to the judge of probate, and objections thereto are on grounds stated, and, among others, that the right of appeal from such order of dismissal did not exist, and the act under which the district was sought to be formed was unconstitutional. The opinion as rendered, or amended judgment or decree, was to the effect "that the Drainage Act of the Legislature of Alabama, approved July 21, 1927, is unconstitutional, and the petition filed in this (that) cause is dismissed."

The petition in the probate court refers to "the plat or map attached and marked Exhibit A and made a part thereof." The two documents will be considered as one pleading. Grimsley v. First Ave. Coal & Lumber Co., 217 Ala. 159, 115 So. 90. In that exhibit is the prominent designation of the primary purpose: "Proposed location of Sea Wall," "Location of proposed Sea Wall," "Mobile County Drainage District No. 1." The petition shows its dominant feature for the right of the construction or building of a sea wall in Mobile Bay and a drainage district incidental and adjacent to the construction and maintenance of the sea wall. The report of the surveyors makes this proposed improvement as that of a sea wall alongside and within Mobile Bay about 200 feet in the bay and beyond the present and normal line of the shore or bluff, and to extend alongside its western shore for a given distance of about 6½ miles. Such are the initial petition, survey, report, and recommendations made and filed in the probate court. There was appointed a day for hearing objections before the notice issued, and due process was given the owners of lands to be affected by the proposed plan or improvement sought to be made on and along the western shore of Mobile Bay.

The engineers' report, among other things, contains the following:

"Such work as requested for in said petition will be conductive to the public health, safety, convenience and welfare.

"The general plan of the construction work contemplated in this preliminary engineering report is to provide an improvement that will accomplish two essential features in all drainage work; first to prevent the overflow of lands, or to prevent the erosion and subsequent overflow of land; and second to facilitate the rapid run off of water falling within the district. The description of this general plan for these two features can best be made separately.

"To prevent overflow or to prevent erosion and subsequent overflow, it is recommended that a wall of plain Portland Cement Concrete, or a wall of reinforced Portland Cement Concrete, properly supported on piles, be built beginning at a point on the Arlington Pier, approximately one-half mile east of the Western shore of Mobile Bay at mean high tide, thence westwardly and southwardly approximately parallel with the present shore line of Mobile Bay at mean high tide, to the north bank of Dog River, at its entrance to Mobile Bay and thence westwardly along the north bank of Dog River to the bridge to be built by Mobile County over Dog River on the Cedar Point Road.

"* * * We have estimated that this wall will be located approximately two hundred feet east of the existing bluff line on the Bay Front Road. This will provide ample space, when filled, for the construction of appurtenances, necessary for proper protection of the wall, such as the placing of an impervious covering on the soil directly behind the wall. The total height of this wall and appurtenances, above mean low tide has been estimated as twelve feet. The total length will be approximately 36,400 linear feet.

"In the tidal marsh sections it is not contemplated improving them to such an extent as to prevent overflow. To facilitate the rapid run-off of water falling within the district, it is recommended that the existing waterways within the limits of the territory described be cleared of undergrowth, straightened, widened, and graded to a uniform slope

in that portion of said waterways, where the grade of the same is above mean low tide. It is also recommended, that these existing waterways be further improved in certain sections (particularly those sections that lie between the west line of the present Bay Front Road to and through the proposed wall) by the installation of pipe and reinforced concrete culverts.

"The Map hereto attached shows the territory that should be included in the district and in a general way, the location and nature of the tentative improvement proposed. * * *

"It is our opinion that the improvement as outlined in this report can be constructed in a satisfactory manner, at a cost not to exceed $1,826,000.00."

The motion of an adjacent property owner to deny the prayer of the petition is on the grounds: (1) That the court was without jurisdiction to proceed and grant relief; (2) the statute under which the petition purports to be filed is violative of the Constitution; (3) the petition does not allege that lands proposed to be included in that district are subject to overflow or are too wet for cultivation or other use; (4) that movant property owner shows that lands included in the proposed district "are neither subject to overflow nor too wet for cultivation or other use"; (5) that said property owner "shows to your Honor that a drainage of so much of her lands, which are west of the Bay Shell Road, would not be a public benefit or utility, nor would the public health, convenience or welfare be promoted by draining, ditching or leveeing the same, or by changing or improving the water courses, or by the installation of tile systems, pumping plants or other things, within the terms of the Act of the Legislature, under which said petition purports to be filed."

Another property owner adds to the foregoing objections the following:

"Because the proposed improvement is primarily and predominately to consist of a sea wall of concrete of approximately 36,400 linear feet along the Western Bay Shore, with back filling and impervious covering on soil directly behind said wall and with other appurtenances to said proposed wall, and none of the statutes referred to in the petition filed in this cause cover or authorize such an improvement.

"Because the proposed improvement consists in the main, of a sea wall with appurtenances for the purpose of preventing a so called overflow and in the alternative, to prevent erosion and subsequent supposed overflow which purpose has nothing to do with drainage and the drainage feature of the plan is a minor matter, and there is no segregation of expense to the sea wall and appurtenances on the one hand, and the drainage feature on the other. * * *

"Because the title to the Drainage Act of 1927, does not cover a sea wall, or sea wall and appurtenances such as is contemplated in the proposed improvement plan, and the body of said Drainage Act could not constitutionally go further or cover more than its title.

"Because the proposed sea wall and appurtenances in this proposed improvement constitute a separate and distinct and independent subject from drainage, and the said Drainage Act of 1927, could not include said wall and appurtenances, as it would be unconstitutional, in that it would contain two subjects."

The foregoing will illustrate the insistences made by many owners of adjacent property to be affected by the proposed improvements.

Upon the hearing the judgment rendered was that "said Drainage Act of 1927 is unconstitutional," and exceptions by original petitioners were noted to said decree or ruling; thereafter the judgment was more fully or formally entered as has been indicated. These orders did not adjudge costs or authorize the issue of execution therefor. The original petitioners took an alleged appeal to the circuit court on giving the required bond. There were due motions in the circuit court to dismiss the appeal on the grounds: (1) That the judgment rendered was not final and did not support an appeal; (2) that no appeal was authorized by law from such judgment of dismissal of the petition by the probate court; (3) that the circuit court was without jurisdiction to hear or determine the appeal or attempted appeal; (4) because the Drainage Act of 1927 nor the Agricultural Code of 1907 authorized a sea wall such as was proposed for construction; (5) and also upon grounds that such act, proposed improvements, and assessments therefor were offensive to the provisions of the Constitution. These motions of the relators (petitioners here) were denied and relators duly excepted; and the bill of exceptions presented and signed by said circuit judge is before us, together with the complete transcript of record and proceedings in the probate and circuit courts.

█ If the statute does not give the circuit court jurisdiction to review a judgment of an inferior court by appeal, any action of the circuit court on appeal will be arrested on a timely application to this court. Ex parte State ex rel. Martin, 200 Ala. 15, 75 So. 327; Ex parte State ex rel. Tillery, 217 Ala. 656, 117 So. 294; Ex parte Smith, 23 Ala. 94.

█ Has the circuit court transcended its jurisdiction in declining to dismiss the appeal from the probate court, and in proposing to retry the issues under the original petition? If so, prohibition from this court is the proper revisory writ issued in superintendence of such inferior jurisdiction. Anders v. Lindsey, Judge, etc., 203 Ala. 48, 82 So. 8; Ex parte

Johnson, 203 Ala. 579, 84 So. 803; Goodwin, Judge, v. McConnell, 187 Ala. 431, 65 So. 788; Hill v. Wittmeier, 209 Ala. 355, 96 So. 327. The preliminary question of the right to proceed with the trial or hearing in the circuit court depends upon the nature and legal effect of the judgment in the probate court: Was it final in the sense as that under statutory provisions it supports an appeal? Sections 6114, 6115, Code 1923; Drainage Act 1927, §§ 6, 11 and 21, pp. 106, 108, 112, and 118.

The authorities are collected in De Graffenried v. Breitling, 192 Ala. 254, 68 So. 265, on the nature and subject of "final" judgments that have been held to support an appeal to this court. The form and requirement of such final judgments, and the requirement that there be a judgment disposing of the rights of parties and over for costs to support an appeal, are declared in Ex parte Adams, 216 Ala. 241, 113 So. 235; Cooper v. Cooper, 216 Ala. 366, 113 So. 239; Martin v. Ala. Power Co., 208 Ala. 212, 94 So. 76; Lathrop Lumber Co. v. Pioneer Co., 207 Ala. 522, 93 So. 427; State ex rel. Wright v. Kemp, 205 Ala. 201, 87 So. 836; Wise v. Spears, 200 Ala. 695, 76 So. 869; Meyers v. Martinez, 162 Ala. 562, 50 So. 351; Eslava v. Jones, 79 Ala. 287. In Jemison v. Town of Fort Deposit, 214 Ala. 471, 108 So. 397, it is declared: "The judgment was 'that the defendant go hence and have and recover of the plaintiff all costs in this behalf expended, for which let execution issue.' This judgment may have lacked something of formal correctness, but it sufficed to dispose of the cause, and so gave jurisdiction on appeal. We find nothing to the contrary in Lathrop Lumber Co. v. Pioneer Lumber Co., 207 Ala. 522, 93 So. 427, or the cases there cited."

This court has also declared that such a final judgment as will support an appeal is necessary to confer jurisdiction on appeal; and the lack thereof cannot be waived. State ex rel. Wright v. Kemp, 205 Ala. 201, 87 So. 836; Lathrop Lumber Co. v. Pioneer Lumber Co., supra. The judgment before us does not strictly conform to the definition or requirements of final judgments under the general statutes providing the right of appeal. Ex parte Adams, 216 Ala. 241, 113 So. 235; Lathrop Lumber Co. v. Pioneer Lumber Co., supra. This judgment is not within the several classes dealt with and the right conferred by section 6114 of the Code. It is insisted that this judgment was within section 6115 of the Code as applied and construed in Awbrey v. Estes, 216 Ala. 66, 112 So. 529.

The right of appeal is not given in section 6115, Code of 1923, and if not within the requirements of final judgments under section 6114, Code, did the provisions of the drainage laws amount to an addition thereto of the right of appeal from such a judgment as that before us? For the purpose of an answer to such inquiry of that right vel non, under sec-

tions 6, 11, and 21 of the Drainage Act (General Acts 1927, pp. 106, 108, 112, 118), it may be necessary to consider the provisions thereof with some detail—dependent on the constitutionality of the act.

For convenient reference, the several sections touching appeals, contained in the Drainage Act and Agricultural Code of 1927, are: Section 6 as to probate and circuit courts is a venue statute, Acts 1927, p. 108. and is the same as section 497 of the Agricultural Code, p. 190; section 11 of the Drainage Act (Acts 1927, p. 112) appeals from an order including and excluding property, and is the same as section 503 of the Agricultural Code, p. 194; section 21 of the Drainage Act appeals from an order or report of the board of reviewers and is identical with section 513 of the Agricultural Code.

In a general statutory authority for appeals, held not to apply to proceedings under special acts not in the ordinary course of judicial procedure in said court, the remedy in such case is by certiorari. Crowder v. Fletcher, 80 Ala. 219, 224. To illustrate, it is held by this court that the statutory proceedings in the probate court for the creation and erection of a milldam are not reviewable under the general statute for appeals, McCulley v. Cunningham, 96 Ala. 583, 11 So. 694; see, also, Ex parte Dickens, 162 Ala. 272, 279, 50 So. 218; Ex parte Louisville & N. R. Co.. 176 Ala. 631, 58 So. 315; Ex parte Griffin, 177 Ala. 243, 59 So. 303; Ex parte Bankhead, 200 Ala. 102, 75 So. 478; Ex parte Sloss-Sheffield S. & I. Co., 207 Ala. 219, 92 So. 458; nor proceedings to establish a stock law district. Stanfill v. Court of County Revenue of Dallas County, 80 Ala. 287, 290; Com'rs of Blount County v. Johnson, 145 Ala. 553, 556, 39 So. 910; Mayfield v. County Com'rs, 148 Ala. 548, 552, 41 So. 932; Davis v. McColloch, 191 Ala. 520, 521, 67 So. 701; nor order by the probate court as to an election to vote on prohibition, Miller v. Jones, 80 Ala. 89; Mills v. Court of Com'rs, 204 Ala. 40, 85 So. 564; City of Birmingham v. Southern B. Tel. Co., 203 Ala. 251, 82 So. 519; and the several proceedings heretofore considered under the Drainage Act of 1915 (Laws 1915, p. 167), where the probate court refused to act in the premises, held the remedy to be employed was mandamus, Robertson v. Collins, 218 Ala. 54, 117 So. 415; Collins v. Hollis, 212 Ala. 294, 102 So. 379. And mandamus was employed to compel the establishment of a road, and was entertained as being the proper remedy, Bradley v. State ex rel., 210 Ala. 166, 97 So. 543; where the petition was dismissed in an effort to establish private road on account of lack of constitutional authority, certiorari was held to be the remedy, Steele v. County Com'rs, 83 Ala. 304, 308, 3 So. 761; Davis v. McColloch, 191 Ala. 520, 67 So. 701.

The question then recurs, whether (1) such judgment of dismissal on constitutional

or jurisdictional grounds is reviewable under provisions of the general law; (2) if so, whether the judgment rendered was such a finality as will support an appeal under section 6114, Code. We have shown that the appeal from the instant judgment cannot be entertained under the provisions of the general law, for the reason that it is not final within the rule laid down in Ex parte Adams, 216 Ala. 241, 113 So. 235; Cooper v. Cooper, 216 Ala. 366, 113 So. 239; Lathrop Lumber Co. v. Pioneer Lumber Co., 207 Ala. 522, 93 So. 427; Wise v. Spears, 200 Ala. 695, 76 So. 869. In such a case the court is bound to dismiss the appeal ex mero motu. Meyers v. Martinez, 162 Ala. 562, 50 So. 351; Wise v. Spears, supra.

In this connection it should be further said that the refusal of the judge of probate to appoint a drainage commission, under the former drainage acts, was considered or reviewed by this court, not by appeal, but by way of petition for mandamus, and relief sought denied; the holding being that the act was unconstitutional. Bradley et al. v. State ex rel. Rockwell, 210 Ala. 166, 97 So. 543; Robertson v. Collins, Judge, 218 Ala. 54, 117 So. 415; Collins v. Hollis, 212 Ala. 294, 102 So. 379.

It was under this statute that the judge of probate declined to entertain the petition establishing the drainage district, and petition for mandamus was resorted to and heard in this court on the theory that no other adequate remedy or method of review existed when the court declined to entertain the petition on constitutional grounds. Ex parte Jackson, 212 Ala. 496, 497, 103 So. 558, and authorities; Wilson v. Duncan, 114 Ala. 659, 21 So. 1017. Had the rulings in the Bradley and Collins Cases, supra, been subject to review by appeal, and under provisions of the general law, the same would not have been considered by way of petition for mandamus. These authorities appear to be conclusive against the contention made, that the judgment of the probate court declining to take jurisdiction is subject to review by appeal to the circuit court.

We do not declare that the decree of the probate court in the premises may be compelled by mandamus. The right to proceed, on the petition filed in the probate court, to judgment other than that rendered, is dependent upon whether or not the law under which that procedure was sought to be invoked was constitutional, and, if so, whether the proposed improvement was within the provisions of the statutes.

Thus we are brought to the consideration of the provisions of the drainage statute, if the same is constitutionally enacted.

It is desirable that we further consider the several insistences against the right of further procedure in the lower court. It is suggested, by distinguished counsel, that the acts under which these proceedings were brought are unconstitutional. Therefore, it is insisted that the probate court had not the jurisdiction to proceed to judgment. Yauger v. Taylor, 218 Ala. 235, 118 So. 271; Nashville, C. & St. L. R. v. Boaz, 213 Ala. 667, 106 So. 192; Decatur v. Brock, 170 Ala. 149, 54 So. 209.

■ The jurisdiction of a probate court, other than that long recognized as its original jurisdiction, as orphans' business and administrations, etc., is statutory and limited thereby as is indicated by our decisions. Any attempt to assume jurisdiction beyond its original or its clearly defined statutory powers would be void. Bowen v. Holcombe, 204 Ala. 549, 87 So. 87; Rhodes v. Sewell, 21 Ala. App. 441, 109 So. 179; Singo v. Fritz, 165 Ala. 658, 51 So. 867; Singo v. McGhee, 160 Ala. 245, 49 So. 290.

We may approach the question of constitutionality vel non of the 1923 Act, p. 592, under the effort to amend the Constitution as affecting Mobile and Baldwin counties, and its attempted application under the 1927 Act, p. 106.

We have adverted to the fact that the decisions under the Drainage Act of date of 1915 were held violative of sections 23, 212, of the Constitution 1901. Bradley v. State ex rel. Rockwell, 210 Ala. 166, 97 So. 543; Collins v. Hollis, 212 Ala. 294, 102 So. 379; Robertson v. Collins, Judge, 218 Ala. 54, 117 So. 415.

Subsequent to these decisions, the Constitution was attempted to be amended by amendment XXI, to which we will advert. It must be borne in mind that the Drainage Act of 1915 was declared unconstitutional because: (1) In the exercise of eminent domain, it conferred upon the drainage districts the power of taxation, or enforced subscription for the benefit of "other kind of corporations, other than municipal, or for the benefit of any individual or association," section 23 Const.; (2) and Justices Sayre, Thomas, and Miller were of opinion that the act granted the power to levy taxes to individuals, private corporations, or associations contrary to section 212 of the Constitution, Collins v. Hollis, 212 Ala. 294, 102 So. 379. Mr. Chief Justice Anderson said on the last point: "While not questioning the soundness of the opinion as to section 212 of the Constitution, he does not care to commit himself to the same, as he thinks the act is so palpably repugnant to section 23 that it is unnecessary to resort to section 212 of the Constitution." This decision was followed by Robertson v. Collins, 218 Ala. 54, 117 So. 415; and the act for the drainage amendment was adopted in 1923, p. 593. The XXI amendment does not expressly confer upon the Legislature the power to authorize drainage districts to levy taxes by special assessments, but does it so authorize by implication? The answer

**18**

depends upon whether that power is reasonably necessary to give the amendment a field of operation. Opinion of the Justices, 209 Ala. 593, 601, 602, 96 So. 487. This amendment expressly conferred upon the Legislature the power to "form or provide for the formation of districts for establishing and maintaining a drainage system, for the building and maintaining of public roads, and for the building and maintaining a sea wall or other protection against waves, storm or flood therein; and provided for the assessment of *the whole or part of the costs of* such improvements against the lands in such districts, to the extent of the increased value of such land by reason of the special benefits derived from such improvements; and may provide *for the issuance of bonds by such district,* with or without an election, and provided the provisions as to roads and sea wall shall apply only to Mobile and Baldwin Counties."

Prior to the adoption of this amendment, the Legislature had no power to form such drainage districts; among other reasons, the state was forbidden to engage in such internal improvement, etc. Section 93, Const.; Smith Case, 217 Ala. 311, 116 So. 695. The Legislature had not the power to authorize a county to issue bonds secured only by an assessment against the land within a district less than the county; nor did it have the power to authorize the county to empower such district to issue bonds. The only bonds that could be issued under the authority of the county were obligations of the whole county. Sections 215, 222, and 224 of the Constitution 1901. The county has only such powers as are expressly or necessarily implied in statutes and constitutional provisions. 15 C. J. 419, § 51. The county had authority to issue bonds, within constitutional limitations, only after authorization by an election held, as required by law, by an authorized political subdivision of. or the whole, county. Section 222 Constitution. Besides, counties could be authorized to levy taxes "to pay any debt or liability now existing * * * or that may hereafter be created for the erection of necessary public buildings, bridges, or roads, etc. Section 215, Constitution.

The drainage amendment to the Constitution was necessary to give the Legislature power to authorize counties to engage in drainage and sea wall improvements, and to assess a part of the costs thereof against the lands in the districts specially benefited thereby. There is a field for the operation of this amendment as the relieving from the restrictions of section 23 of the Constitution, on which the Collins Case rested, without conferring upon the drainage districts the power of taxation and relief from section 212 of the Constitution.

Is the power to levy assessments by the drainage districts necessarily implied and relief against the denials of section 212 of the Constitution? The amendment provides that the whole *or a part of the cost of the improvement* may be assessed against the lands in such district. This question of apportionment cannot be conferred upon the district. Such a district could not impose an obligation upon the whole county without the county's consent; an obligation or indebtedness arising out of such a local improvement within the county and in which the county as a whole has no part. The only authority competent to apportion the costs of the improvement between the land in the district and the whole county would be the Legislature or its municipal arm or agency—the county board of revenue or county commissioners. As an incident to the power of apportionment is the power to levy the assessment, and this must be exercised by the Legislature or its municipal instrumentality as county boards of revenue or county commissioners, as the case may be. Sections 23 and 212 of the Constitution of Alabama of 1901 prohibit the Legislature from conferring upon such districts any part of the taxing power. Consequently what is known as the Drainage Amendment of 1923, if duly adopted, does not modify sections 23 and 212 of the Constitution as to the principle adverted to in the case of Collins v. Hollis, supra, which applies to the Drainage Act of 1927 and corresponding sections of the Agricultural Code.

 It is insisted by one of the petitioners that the fact that the Act of 1923, p. 592, was submitted to the Governor for his approval under section 125 of the Constitution, violated section 287 of the Constitution. It was the purpose of sections 284, 285, 286, and 287 of the Constitution to provide for proposals by the Legislature of amendments to the Constitution without official interference or embarrassment by the Governor. Johnson v. Craft, 205 Ala. 386, 394–397, 87 So. 375. We are not disposed to declare the act invalid because it is indorsed approved by the Governor.

It is further insisted that amendments may be proposed to the Constitution as indicated in section 284 of the Constitution. The provisions of section 284 will be taken with the further requirements of the Constitution contained in section 285, as follows: "Upon the ballots used at all elections provided for in Section 284 of this Constitution the substance or subject-matter of each proposed amendment shall be so printed that the nature thereof shall be clearly indicated. Following each proposed amendment on the ballot shall be printed the word 'Yes' and immediately under that shall be printed the word 'No.' The choice of the elector shall be indicated by a cross mark made by him or under his direction, opposite the word expressing his desire, and no amendment shall be adopted unless it receives the affirmative vote of a majority of

all the qualified electors who vote at such election." Was the "substance or subject-matter" of the proposed amendment being considered "so printed" "upon the ballot used" at said election (of its alleged adoption) "that the nature thereof was (shall be) clearly indicated," as required by the Constitution? In the Act of September 26, 1923 (General Acts 1923, p. 593), the amendment proposed by the Legislature was materially different from that submitted to the qualified voters of the state "to be voted upon" at the general state election in November 1924. The first section of that act contains the words, "for the building and maintaining of public roads, *and for building and maintaining a sea wall or other protection* against waves, storm or flood *therein.* * * * *Provided the provisions as to roads and sea wall shall apply only to Mobile and Baldwin Counties.*" (Italics supplied.) In section 3 of said act the Legislature prescribed the amendment submitted to the qualified voters, and the form of the official ballot to be printed and used "for such election." The form thus prescribed for the official ballot was materially different from the amendment authorized to be submitted in section 1 of said act. It differed in this, that the local provision and application of said amendment to Mobile and Baldwin counties "as to roads and sea wall" were required to be omitted from said official ballot to be prepared and used at said election. That is to say, the amendment proposed by the Legislature and that voted on were materially different. One had a local application to Mobile and Baldwin counties, and the other required to be submitted as per official ballot was of general application. And if that voted on and that submitted be materially different, it was not legally adopted, and thereby void.

. The official ballot authorized in the act to be printed and used at said election substantially departed from the proposed amendment to be submitted to the "qualified electors of the State," "forma legalis." 19 Cyc. p. 1430, note 3.

The secretary of state has furnished us with a copy of the form of the ballot printed and employed in said election for the proposed amendment. It is as follows:

"Proposed Amendment No. 2.

"Section 1. "The Legislature may form or provide for the formation of districts for establishing and maintaining a drainage system; for the building and maintaining of public roads, and for building and maintaining a seawall or other protection against waves, storm or flood therein; and provide for assessment of the whole or part of the cost of such improvements against the land in such districts to the extent of the increased value of such land by reason of the special benefits derived from such improvement, and may provide for the issuance of bonds by such district with or without an election. Provided the provisions as to roads and seawall shall apply only to Mobile and Baldwin Counties."

As prepared by such official, it conforms to the proposed amendment in section 1 of the act of 1923, notwithstanding the contrary instruction given such official and contained in section 3 of the act of 1923 (General Acts, p. 593) for the official ballot to be prepared and used at said election. As directed to be printed in section 3, it was an insufficient designation of "the proposed amendment," in that its "nature" was not required to be clearly indicated, as required in section 282 of the Constitution. If the nature thereof was "clearly indicated" upon the official ballot, as it was prepared in the secretary of state's office, printed, distributed, and used at said election, this was by virtue of a departure, in the secretary of state's office, from the express provisions in section 3 of the act of 1923.

In Johnson v. Craft, 205 Ala. 386, 87 So. 375, is the declaration that a favorable vote by the electorate on a proposal to amend the Constitution may not cure or render innoxious antecedent failures to observe the commands of the Constitution, in respects to the "formulation or submission of proposed amendments." And in Collier, Governor, etc., v. Frierson et al., 24 Ala. 100, 109, it was long ago declared, by Mr. Justice Goldthwaite for the court: "We entertain no doubt, that, to change the constitution in any other mode than by a convention, every requisition which is demanded by the instrument itself, must be observed, and the omission of any one is fatal to the amendment. We scarcely deem any argument necessary to enforce this proposition. The constitution is the supreme and paramount law. The mode by which amendments are to be made under it is clearly defined. It has been said, that certain acts are to be done—certain requisitions are to be observed, before a change can be effected. But to what purpose are these acts required, or these requisitions enjoined, *if the Legislature or any other department of the government, can dispense with them.* To do so, would be to violate the instrument which they are sworn to support; and every principle of public law and sound constitutional policy requires the courts to pronounce against every amendment, which is shown not to have been made in accordance with the rules prescribed by the fundamental law." (Italics supplied.) That is to say, in Johnson v. Craft, supra, the case of Collier, Governor, etc., v. Frierson et al., supra, was adverted to with approval in the opinions rendered, on pages 400, 401 and 402 of 205 Ala. (87 So. 387) of the majority opinion.

In Jones v. McDade, 200 Ala. 230. 233, 75 So. 988, it was declared that "the inquiry whether the organic law has been validly and effectually amended is * * * a judicial question." This court said: "It is not debatable in this jurisdiction that the inquiry whether the organic law has been validly, effectually amended is, under the Constitution, a judicial question. The suggestion to the contrary was finally concluded by this court in Collier, Governor, v. Frierson, 24 Ala. 100, 109, decided in 1854."

The writer is of opinion that the instant case can be somewhat distinguished from the Johnson-Craft Case. In the latter, the Legislature delegated the fixing of the date of the election to the Governor by his proclamation; here, the Legislature proposed an amendment and instructed and authorized its submission to qualified electors of the state without a sufficient statement of its "substance or subject-matter," and that some one in the secretary of state's office, charged with preparing the ballot required of the proposed amendment, "so printed (it) that the nature thereof was (shall be) clearly indicated." Entertaining the view or rule of construction contended for in Johnson v. Craft, and that for the consideration of the two sections of the act (sections 1 and 3, 1923 Acts, p. 593) pari materia, the secretary of state, or his clerk, did not depart from the requirements for the local amendment and act, as affecting Mobile and Baldwin counties, in the preparation of the official ballot as employed in the election on "Proposed Amendment No. 2," General Election on Tuesday, November 4, 1924, if the form prescribed in section 3 of the act was forma verbalis and not forma legalis. Beawfage's Case, 10 Coke, 99 a; Smith v. Allen, 1 N. J. Eq. 43, 50, 21 Am. Dec. 33.

The question as to the form prescribed and employed is: To what class does it belong? " 'It is to be known that there are two manner of forms, sc. forma verbalis and forma legalis; forma verbalis stands upon the letters and syllables of the act; forma legalis is forma essentialis, and stands upon the substance of the thing to be done, and upon the sense of the statute, quia notitia ramorum hujus statuti non in sermonum foliis sed in rationis radice posita est.' Beawfage's Case, 10 Coke, 99 a. 100 a [quoted in Smith v. Allen, 1 N. J. Eq. 43, 50, 21 Am. Dec. 33]." 19 Cyc. 1430, note 3. It would appear that the *form prescribed* by the Legislature for the ballot was of the class long designated as "forma legalis," in that so important a function as was necessary to be employed on the ballot to be used by the qualified electorate, in an election to amend organic law, would not be of the class of form known as "forma verbalis." In the case of Briggs & McClure v. Greenlee, Minor, 123, 124, the matter of form is adverted to and the quære of "what matters of substance" is answered by Judge Crenshaw, saying: "All matters essential to the merits of the action are matters of substance. * * * Matter of form is that which cannot aid the merits of the action, or superinduce any new force or virtue to the cause of action, or vary the nature or legal effect of the writing declared on." Realty Inv. Co. v. City of Mobile, 181 Ala. 184, 61 So. 248.

It follows from the foregoing that there was no jurisdiction to entertain the initial petition, and no other judgment could have been rendered in the probate court than that entered declining to entertain the petition.

The circuit court was without jurisdiction, as we have indicated, and the writ of prohibition will issue as prayed, for reasons stated above. In this Mr. Justice SAYRE concurs.

And the constitutionality of said act is concurred in by ANDERSON, C. J., and GARDNER, BOULDIN, BROWN, and FOSTER, JJ., on grounds stated in opinion by Mr. Justice BROWN and additional opinion by Mr. Justice BOULDIN.

This makes necessary the further consideration of said proceedings and jurisdictions of the probate court and the circuit court for reasons now to be stated.

It will be borne in mind that the amendment to the Constitution in question was local in character as to Mobile and Baldwin counties, and can only become effective by a local law. In re Opinion of Justices, 216 Ala. 469, 471, 113 So. 584.

In view of the foregoing ruling by this court, it is now necessary that we indicate that the proposed West Bay shore improvement and sea wall were not authorized by provisions of law contained in the Drainage Act or Agricultural Code. The exhibit map of J. A. Peavy and J. R. Converse is a part of the petition filed in the probate court.

Common knowledge of the general purposes of the drainage laws is to be aided by the statutes heretofore and now obtaining. This is necessary in an understanding of the detailed plans of the improvements proposed (2 Farnham on Water Courses, pp. 103–105); and that the taxpayer may be enabled to inform himself and conclude to acquiescence or contest. To this end the petition for the district, the reports of engineers and that of reviewers, the maps and surveys that are submitted and exhibited, will be considered on review, as the proceeding and part of the pleading in the matter. Grimsley v. First Ave. Coal Co., 217 Ala. 159, 115 So. 90; Sharp v. Eaton, 175 Ind. 441, 94 N. E. 753; Trittipo v. Beaver, 155 Ind. 652, 58 N. E. 1034; Hayes Branch Drainage Dist. v. Illinois Cent. R. Co., 290 Ill. 124, 124 N. E. 819; Petition of Gibbs,

152 Minn. 352, 188 N. W. 1015; Nemaha Valley Drainage District v. Marconnit, 90 Neb. 514, 134 N. W. 177; State v. Penman, 220 Mo. App. 193, 282 S. W. 498.

The sea wall construction proposed was no more the specific subject of General Act 1927, p. 106, than of the Act of 1915, p. 168. The provisions for jurisdiction, power, and authority are the same, or of like general statement in the two acts. As contained in the Act of 1927, its jurisdiction, power, and authority are: "To promote the public health, convenience and welfare by [1] leveeing, ditching and draining the wet, swamp and overflowed lands of the State of Alabama; to provide for the establishment of levee or drainage districts and sub-districts thereof, [2] for the purpose of enlarging or changing any natural water courses and for digging ditches or canals for securing better drainage or providing better outlets for drainage; [3] to provide for building levees or embankments and installing tide gates or pumping plants for the reclamation of overflowed lands, and prescribing a method for so doing; [4] to define offenses against drainage districts and providing penalties therefor; to confer the right of eminent domain to the extent necessary to carry out the purposes of this Act; [5] to provide for the assessment and collection of the costs and expenses of installing drainage systems and issuing and selling bonds therefor, [6] and for the care and maintenance of such improvements when constructed, not in excess of the increased value of such property by reason of the special benefits derived from such improvements." (Numbers ours.)

The purposes of such laws are thus stated under the 1915 Act (Harkins v. Smith, 204 Ala. 417, 419, 85 So. 812, 814): "The prime object of the law is to reclaim and improve agricultural lands within the bounds of the district, not suitable or available for agricultural cultivation without drainage, and at the same time to remove causes and conditions detrimental to the public health and general welfare of the territory embraced in and surrounding such lands. * * * It may be assumed, as a matter of judicial knowledge, that lands within the purview of this statute, and subject to organization as drainage districts, are ordinarily uninhabited by qualified voters, and for this reason, no doubt, the Legislature provided a different method of carrying into execution the governmental powers committed to such organization." That is, the prime object of the drainage statute was, as stated, to promote the public health, convenience, and welfare, for the reclamation or improvement of agricultural lands that were not suitable or available for agricultural cultivation, etc. The purpose was not that for hillside or dry land drainage, or to prevent erosion of soil. Town v. Dunbar, 162 Minn. 491, 203 N. W. 431; Royse v

Evansville, 160 Ind. 592, 67 N. E. 446; Scruggs v. Reese, 128 Ind. 399, 27 N. E. 748.

The engineers' preliminary report is as has been heretofore indicated. That report (1) "to prevent erosion and overflow" recommends the cement wall properly "supported on piles" to be built parallel "with the present shore line" of the bay "at mean high tide," and "approximately 200 feet East of the existing bluff line on the Bay Front Road" for a distance of 36,400 linear feet or approximately seven miles; (2) "in tidal *marsh sections it is not* contemplated improving them to such an extent as to prevent overflow"; that existing waterways therein or thereto be improved; (3) the total cost of the reported improvement will "not exceed $1,826,000.00."

The map attached is primarily a sea wall within the public waters of the bay, and a declared primary purpose was to prevent "erosion and subsequent overflow," and the pleading is judged by this purpose in considering whether the improvement can be done under the general drainage laws.

The fair interpretation of the statutes, that the districts authorized to be formed throughout the state are under the powers and jurisdiction conferred under the amendment to the Constitution in 1924 (see Laws 1923, p. 593) and the express or necessarily implied authority from the Legislature. Harkins v. Smith, 204 Ala. 419, 85 So. 812; 9 R. C. L. p. 644. § 33.

We have indicated the controlling purpose of the proposed improvement is 7 miles of concrete wall supported on piling 200 feet from the west shore line and extending practically parallel with the bluff or bay front, and at "mean high tide line" height; and this improvement "to prevent erosion and subsequent overflow," etc. It cannot be done under the general drainage act that merely provided a threefold manner of or for drainage under the amendment, for public roads and sea wall 'for protection against storms or floods in Mobile and Baldwin counties. The current history of this legislation shows that it was not the legislative intent to so employ the Drainage Act. The legislative journals show two kinds of public improvements for Mobile and the state: (1) A sea wall along the western margin of the bay, (2) and drainage applicable to the state at large. The acts for the sea wall district failed of passage; that for general drainage was passed and given a place in the Agricultural Code. In the rejection of the sea wall acts, it was the manifest legislative intent not to reverse its action by the grant in the drainage laws passed. Acts 1927, p. 106; Agricultural Code, p. 187.

The term "sea wall" nowhere appears in the Drainage Act. This was a significant omission, in view of the insistence that though the bills looking to the construction of a sea

wall along the west bay shore failed of pas-, sage, yet the right was embraced in the acts of 1927. It is a reasonable assumption that the Legislature did not so intend to enact under the title of the Acts of 1927 we have above set out.

The purpose of this enactment for drainage districts was the accomplishment of drainage of agricultural lands by means of ditches, drains, or by means of levees and embankments, to exclude water and prevent overflow of lands termed agricultural. It is not within the title or body of that act that the purpose or end was to *prevent erosion*. We have indicated that the terms employed, as embankment and levees, are used in the ordinary sense, and not in so extraordinary sense as to mean a sea wall. 'It was not with an extraordinary meaning that extended to, covered, or embraced a system of piling in Mobile Bay for the distance of 6½ or 7 miles; it did not mean piling in the bay and laying thereupon a concrete sea wall as per reports and specifications attached to the original petition in the probate court, and at the great cost of a million and a half dollars to be assessed to the property adjacent thereto; and the drainage laws did not contemplate a vast road improvement along that way or bay shore.

The general authorities are to such end, as that drainage districts exercise only such functions as "are expressly conferred" by the Legislature, and not otherwise, or by way of implication of power and authority. 9 R. C. L. 644, § 33; Board of Improvement, etc., v. Moreland, 94 Ark. 380, 127 S. W. 469, 21 Ann. Cas. 957; Ferbrache v. Drainage Dist. No. 5 of Bonner County, 23 Idaho, 85, 128 P. 553, 44 L. R. A. (N. S.) 538, Ann. Cas. 1915C, 43; Elmore v. Drainage Com'rs, 135 Ill. 269, 25 N. E. 1010, 25 Am. St. Rep. 363. The above construction of terms employed in the act was in effect approved in Harkins v. Smith, supra, declaring, as was done, the primary purpose of the Drainage Act was for the "improvement of agricultural land * * * not suitable or available for agricultural cultivation without drainage."

When the drainage statute is sought to be applied to such a sea wall to extend parallel with the "present shore line of Mobile Bay at mean high tide," at the vast cost of $1,626,000, it is sought to be made to do the service of authorizing the construction of improvement (sought by local bills) that was expressly rejected by the Legislature.

The result of drainage by the proposed improvement is negligible or insignificant. At the risk of repetition, we may say it was (1) to prevent overflow of lands, or to prevent erosion and subsequent overflow; (2) and to facilitate the rapid run off of water falling within the district, (a) overflow or erosion by the 6½ miles of piling within the bay with reinforced concrete sea wall thereon is recommended in the engineers' report; and (b) in the tidal marsh section it was not contemplated improving to such extent as to prevent overflow, and there was no question of erosion in such section presented by the pleading or report. And the plan of the engineers, as stated by their report, will not prevent the overflow of said tidal marsh lands.

The feature of the petition and report to facilitate the rapid run-off of water falling within the proposed district, the recommendation was that the existing waterways within the territory described in pleadings and report, that it be cleared of growth, channels, straightened, and graded where the same is above "mean low tide"; that existing waterways be further improved and in sections between the west line of the present bay front road to the proposed sea wall by pipe and reinforced concrete culverts be installed. The proposed improvement is treated as a unit under the law, and an issue is tendered as to what will be accomplished thereby. It follows that the proposed effort must succeed or fail upon its stated principle and dominant feature and not by an incidental or subordinate purpose or result.

When the pleadings illustrated by its exhibits, reports, and map are duly considered in the light of the historical facts shown by the proceedings in the 1927 Legislature, one cannot escape the conclusion that after failure of the sea wall bills, the Drainage Act is now resorted to as a pretext or means to the end proposed by the local acts and rejected by the Legislature.

The whole improvement must be supported or fail as authorized by law and proposed by the pleading and report. Royse v. Evansville & T. R. H. Co., 160 Ind. 592, 67 N. E. 446. The west bay shore principal improvement sought is not justified or authorized by special or local laws; nor can it be sustained under the general Drainage Act of 1927, or the provisions of the Agricultural Code. The jurisdiction was challenged in the probate and circuit courts.

In the granting of the writ of prohibition for reasons stated, ANDERSON, C. J., SAYRE, GARDNER, BOULDIN, and FOSTER, JJ., concur; BOULDIN, J., does not wish to express his opinion on the question of appeal under the Drainage Law; BROWN, J., having indicated his views, expresses no opinion on the last-stated ground, and dissents from granting the writ.

The petition for prohibition to the judge of the circuit court is granted, and writ will issue.

BROWN, J. We are in full accord with the holding in Collier, Governor, etc., v. Frierson et al., 24 Ala. 100, "that, to change the Con-

stitution in any other mode than by a convention, every requisition which is demanded by the instrument itself, must be observed, and the omission of any one is fatal to the amendment;" that neither the Legislature nor any other department of the government can dispense with the constitutional requirements without violating the Constitution which they are sworn to support, "and sound constitutional policy requires the courts to pronounce against every amendment, which is shown not to have been made in accordance with the rules prescribed by the fundamental law." The converse of this proposition is true. If the requirements of the Constitution are complied with in the adoption of an amendment, the courts are without power to destroy it, because when adopted in accordance with the constitutional requirements, it is the expression of the sovereign will, and becomes the supreme law of the land.

In Jones v. McDade, 200 Ala. 230, 75 So. 988, one of the questions presented was whether or not the failure of the official upon whom the law imposed the duty of preparing the ballot, to follow the prescription of the act proposing the amendment, rendered the election held thereunder void. After pointing out certain omissions from the ballot, it was there observed: "It is contended, and was so ruled below, that these omissions rendered the ballot deficient under the provisions of Section 285, quoted before, in that the matter on the ballot did not embrace 'the substance or subject-matter' of the proposed amendment so as to clearly indicate the 'nature' thereof. It is compliance with the Constitution (section 285), not the directions of the act accompanying and proposing the amendment, that determines the validity, the efficacy, of the official ballot in these circumstances. Nevertheless and by the way, it is strange that in the preparation of this feature of the official ballot the legislative directions given in this instance with respect to what the official ballot should contain (Gen. Acts 1915, p. 213) seems to have been at least incautiously ignored." Still the amendment was sustained.

That case holds: (1) That whether a ballot on a proposed constitutional amendment is valid is determined by compliance with section 285 of the Constitution, and not with the direction of the act proposing the amendment; (2) that if the matter printed on the ballot clearly indicated the nature of the amendment in respect to its substance or subject-matter, such ballot was a compliance with the requirements of section 285 of the Constitution; (3) that it was not the office of the ballot to inform the elector of the full purport of the amendment, but to give the elector an opportunity to express his will for or against the adoption of the amendment; (4) that the office of the proclamation of the Governor carrying a full draft of the

amendment, published in each county of the state for eight consecutive weeks previous to the election, is to advise the electorate of its full purport and effect, and it must be assumed that they are fully advised as to the full purport of the amendment.

In the case at bar, the ballot not only follows the legislative prescription in the act, but goes further and carries the proviso: "Provided the provisions as to roads and sea wall shall apply only to Mobile and Baldwin Counties." And the proclamation of the Governor, found in the archives of the state, of which the court takes judicial notice, published for eight consecutive weeks in each county of the state previous to the date of the election, contains a complete and exact copy of the amendment, and the certificate showing a canvass of the returns from the election evidences the adoption of the amendment by a vote of more than two to one.

Therefore, on no theory can it be held that the constitutional requirements have not been fully complied with in the adoption of this amendment as article XXI of the Constitution.

The manifest purpose and effect of the amendment was to remove the limitations on legislative authority imposed by sections 23 and 212 of the Constitution, pointed out in the cases of Bradley et al. v. State ex rel. Rockwell, 210 Ala. 166, 97 So. 543, and Collins, Judge, et al. v. Hollis, 212 Ala. 294, 102 So. 379. This was recognized and stated in the recent case of Robertson v. Collins, Judge, et al., 218 Ala. 54, 117 So. 415.

This interpretation of the amendment, article XXI of the Constitution, answers the only constitutional objection urged against the act approved July 21, 1927, commonly referred to as the Drainage Act. Acts 1927, pp. 106–138.

ANDERSON, C. J., and GARDNER, BOULDIN, and FOSTER, JJ., concur in the foregoing. SAYRE and THOMAS, JJ., dissent.

BROWN, J. (continuing). As to the right of the proponents in the proceedings in the probate court to appeal from the order of the judge of probate dismissing their petition, if it be conceded that section 6 of the Drainage Act, which provides that "The Court of Probate of the County in which said petition is filed shall thereafter maintain and have original * * * jurisdiction co-extensive with the boundaries and limits of said district without regard to the county lines for all purposes of this act, subject, however, to the right of appeal to the Circuit Court of the County in which the petition is filed" (Acts 1927, pp. 108, 109), is a venue statute, and does not cover the right to appeal, and there is no other provision in the act that confers such right, still this section recog-

nizes the right of appeal and confers jurisdiction on the circuit court, if an appeal is otherwise authorized.

Section 6114 of the Code provides: "An appeal lies to the circuit court or supreme court from any final decree of the court of probate, or from any final judgment, order, or decree of the judge of probate; and in all cases where it may of right be done, the appellate court shall render such decree, order, or judgment as the court of probate, or the Judge thereof, ought to have rendered."

In McKenzie v. Jensen, 195 Ala. 36, 70 So. 678, it was ruled that an appeal under this section would lie from an order of the probate court dismissing an escheat proceeding.

In McClurkin v. McClurkin, 206 Ala. 513, 90 So. 917, it was held that an order of the circuit court dismissing the petition of a widow to set aside homestead exemptions was a determination of the widow's right and was therefore final and would support an appeal. A like ruling was made in respect to a decree dismissing a petition for intervention. Thornton v. H. A. & B. R. R. Co., 94 Ala. 353, 10 So. 442.

So in respect to a decree sustaining a motion and dismissing a bill "out of court." Schwarz, Rosenbaum & Co. et al. v. Barley et al., 142 Ala. 439, 38 So. 119. And in the recent case of Smith v. Smith, 218 Ala. 701, 120 So. 167, 168, it was held that an order of court granting or denying a petition to modify an alimony decree would support an appeal. In none of these cases was anything said about the taxation of costs. But the petitioner here insists that the decree dismissing the petition is not final because it does not tax the costs against either party, citing in support of this contention Ex parte Adams, 216 Ala. 241, 113 So. 235.

This contention is answered by the fact that the statute under which the proceeding was instituted makes no provision as to the items of cost taxable, but leaves this to the general law prescribing what costs are taxable in proceedings in the probate court. In this respect the act provides: "If the court at the final hearing shall find against the sufficiency of the petition or the improvement it shall dismiss the petition and proceedings at the cost of the petitioners and shall issue an itemized bill of all costs and expenses, which itemized statement of costs and expenses shall have the full force and effect of a judgment and constitute a lien upon the lands of the petitioners within said proposed district, which liens shall be of equal dignity with the lien for general state, county, city, village, school and road taxes," etc.

An examination of the record of the probate court, filed with and made a part of the petition, discloses that nothing was done in the course of the proceedings which would authorize the taxation of a single item of costs. Code 1923, § 7285. To quote the statute: "The law of fees and costs must be held to be penal, and no fee must be demanded or received except in cases expressly authorized by law." Code 1923, § 7255.

It is too well settled to require the citation of authority that the law does not require the doing of a useless or futile act. Costs not being expressly authorized for the acts performed, the rendition of a decree for costs was a useless and futile act, and under the facts of this case was not essential to the finality of the decree.

I am therefore of opinion that the decree of the judge of probate dismissing the petition was such a decree as will sustain the appeal to the circuit court under section 6114 of the Code.

Moreover, I am not in accord with the view that the taxation of costs is essential to the finality of a judgment which disposes of a case on its merits and finally determines the rights of the parties, for the simple reason, often stated, that costs are a mere incident to the proceedings, and the failure or refusal of a court to tax costs should not be allowed to stand in the way of a party's right to prosecute his appeal; that Davis v. McColloch et al., 191 Ala. 520, 67 So. 701, is not supported by the authorities cited, and that case and others of like import are unsound in principle and should be overruled.

I am further of opinion that the proceedings filed in the probate court were sufficient to invoke the authority of that court to determine whether or not the proposed project was within the scope and purpose of the Drainage Act, and that court had jurisdiction and authority to determine that question; and having denied relief on the ground that the act was unconstitutional, the appeal to the circuit court conferred on that court jurisdiction to determine the merits of the proceedings; that the Supreme Court, being strictly a court of appellate jurisdiction in such matters, is without jurisdiction in this proceeding to determine whether or not said project is within the scope and purpose of the Drainage Act, and by so doing has usurped the authority of the nisi prius court, and set itself up as a court of original jurisdiction in this respect.

It is well settled by our decisions that prohibition is not a revisory writ, and should not be issued except in cases of usurpation and abuse of power, and not then unless other remedies are ineffectual. Anders et al. v. Lindsey, Judge, et al., 203 Ala. 48, 82 So. 8; Ex parte Johnson, 203 Ala. 579, 84 So. 803; Goodwin, Judge of Probate, v. McConnell, 187 Ala. 431, 65 So. 789; Ex parte Atlantic Coast Line R. Co., 198 Ala. 24, 73 So. 418; Ex parte Hamilton, 51 Ala. 62; Ex parte Greene and Graham, 29 Ala. 52; Hill v. Wittmeier et al., 209 Ala. 355, 96 So. 327.

I think it clear, therefore, that the writ of prohibition should be denied, and respectfully dissent on this point.

BOULDIN, J. (concurring). I fully concur in the opinion of Mr. Justice BROWN touching the validity of the drainage amendment to the Constitution. This on the authority of Jones v. McDade, 200 Ala. 230, 75 So. 988, a well-reasoned opinion. A comparison of the Montgomery amendment, there considered, with the matter printed on the ballot, discloses the ballot was far more omissive than in this case.

The printed matter on the ballot, appearing on page 237 of the opinion (pages 994 and 995 of 75 So.), contained two things only: (1) That the judge of probate, sheriff, tax assessor, and tax collector of Montgomery will be placed on salaries. (2) That the fees collected by them shall be turned into the county treasury.

As pointed out in the opinion, page 237 of 200 Ala. (75 So. 988), the amendment extended the power of the Legislature to other county officers not named on the ballot. The amendment further empowered the Legislature to go back to the fee system. It expressly provided for certain clerkships and their salaries. It provided for certain expense allowances, wholly distinct from salaries.

So, if we look to the contents of the ballot prescribed in the act submitting the drainage amendment, it was entirely sufficient under the decision in Jones v. McDade, supra.

But, as pointed out by Mr. Justice BROWN, the case of Jones v. McDade expressly holds section 285 self-executing as to the form of ballot, that the duty of compliance is on the officers preparing the ballot, and that any insufficiency in the contents of the ballot as prescribed in the submission action is immaterial if the ballot in fact used carried the matter prescribed by section 285 of the Constitution. The majority opinion in the present case is in direct conflict with Jones v. McDade on this point. I consider the former case, not the present decision, supported by sound reason as well as authority.

I further concur in the decision holding the drainage act constitutional and valid. However, I adhere to the opinion of the justices, cited, that the provision for a sea wall in the drainage amendment does not affect or modify section 106, relating to local legislation; that a sea wall bill under the amendment is a local bill, and must be enacted in conformity to section 106.

I therefore concur in the holding that the Drainage Act does not authorize the sea wall; that the probate court was without jurisdiction, and no appeal could give the circuit court jurisdiction. The writ of prohibition is proper, and I concur in such holding.

I consider a decision on questions going to appeals under the Drainage Act unnecessary, and express no opinion thereon.